**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PLUMBERS' PENSION FUND, LOCAL 130, U.A., PLUMBERS' WELFARE FUND, LOCAL 130, U.A., THE TRUST FUND FOR APPRENTICE AND JOURNEYMAN EDUCATION AND TRAINING, LOCAL 130, U.A., and the PLUMBERS' RETIREMENT SAVINGS PLAN FUND, LOCAL 130, U.A., | ) | |
| | ) | Case No.: 26 CV |
| Plaintiffs, | ) | Judge: |
| v. | ) | Magistrate Judge: |
| INTERSTATE CURB & CONCRETE CUTTING, INC., | ) | |
| Defendant. | ) | |

**COMPLAINT**

The Plaintiffs, PLUMBERS' PENSION FUND, LOCAL 130, U.A., et al. (collectively, "Funds"), by one of their attorneys, Andrew S. Pigott, and the law firm of Gregorio, Stec, Klein & Hosé, in their Complaint against Defendant, INTERSTATE CURB & CONCRETE CUTTING, INC., state as follows:

1. This Court has jurisdiction over this cause as it presents questions under Section 502 of the Employee Retirement Income Security Act and Section 301 of the Taft-Hartley Act. (29 U.S.C. §§1132 and 185).

2. Venue lies in the Northern District of Illinois as the administration of the Funds takes place in Chicago (29 U.S.C. §1132(e)(2)), and because Defendant's principal place of business is in Palatine, Illinois.

3. The Funds are multi-employer plans under 29 U.S.C. §1002.

4. The Funds receive contributions from employers pursuant to their Collective

Bargaining Agreements ("CBAs") with the CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A., ("Local 130"). (Ex. A).

5. Defendant is an employer engaged in an industry affecting commerce, namely commercial, industrial, or residential plumbing.

6. Defendant bound itself to the Local 130 CBA by signing a Memorandum Agreement with Local 130; by making some, but not all, of the contributions required by the CBA; and by maintaining membership in the PLUMBING CONTRACTORS ASSOCIATION OF GREATER CHICAGO ("PCA").

7. The CBA binds Defendant to the Agreement and Declarations of Trust ("Trust Agreements") that created the Funds. (Ex. A, Sec. 9.2).

8. The CBA and Trust Agreements require Defendant to contribute to the Funds for work by its bargaining unit employees. (Ex. A, Sec. 6.1 ("The Employer hereby agrees to employ journeymen plumbers at the Union prevailing wage rates and pay the fringe benefit contributions set forth or to be determined in the manner set forth in Appendix C to this Agreement. The rates and contributions set forth therein shall be deemed the standard rates to be strictly adhered to as of the effective dates shown")).

9. The CBA prohibits any variance from the wages and fringe benefit contributions called for under the CBA. (*Id.* ("No Employer shall pay wages in excess of the rates set forth or to be determined in the manner set forth in Appendix C")).

10. Under the CBA, Employers must contribute contractually set amounts for each hour worked by employees covered by the CBA. (Ex. A, Secs. 9.1-9.4 ("Effective as of the dates set forth in Appendix C, each Employer will contribute the sum per hour set forth or to be determined in the manner set forth in Appendix C for each hour worked by and on behalf of each employee

covered by this Agreement to the *** Fund”)).

11. LOCAL 130 MEMBER X is a Journeyman Plumber, a member of Local 130, and Defendant’s employee.

12. As a Local 130 Journeyman Plumber, employed by a Local 130 signatory and PCA member, LOCAL 130 MEMBER X, is an employee covered by the CBA. (Ex. A, Sec. 1.1-1.3).

13. On or around August 31, 2026, the Funds conducted an ERISA fringe benefit contribution compliance audit of Defendant for the period from July 1, 2022 through June 30, 2026.

14. The audit revealed hours worked by LOCAL 130 MEMBER X for which Defendant made no contributions to the Funds. (Ex. B).

15. When the Funds demanded payment of the audit findings, Defendant refused to pay for LOCAL 130 MEMBER X’s audit-detected hours. (Ex. C).

16. Defendant contended it had a side-agreement with LOCAL 130 MEMBER X where it would pay him a fringe benefit-free wage, less than that provided by the CBA, for non-bargaining unit work and/or paid him bonuses, as opposed to wages for hours worked. (*Id.*).

17. Defendant later protested the audit findings on the grounds that MEMBER X was moonlighting, performing work on Defendant’s owner’s “houses, vehicles, and boat,” as was his “right,” and for which no contributions could be claimed. (Ex. D).

18. CBA Section 1.5, the “Moonlighting” provision, states:

> No employee shall be permitted to work for himself or work after hours or on Saturday, Sunday or Holidays as a self-employed Employer or work for another Employer as a subcontractor. First time violators may be summoned before the Union Executive Board in accordance with the procedures of the United Association Constitution. However, a trial shall be set for repeat offenders. Discharge from employment for repeat offenders will not be construed as a violation of this Agreement.

19. The previously quoted wage and contribution provisions of the CBA make no distinction between the amount due employees for bargaining unit work and non-bargaining unit work. (Ex. A, Secs. 9.1-9.4).

20. Federal appellate authority considering similar CBA-language to the Local 130 CBA hold that contributions are due for each hour worked by a covered employee regardless of the nature of the work. See *McCleskey v. DLF Construction, Inc.*, 689 F.3d 677 (7th Cir. 2012); *Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, 606 F. App'x 798 (6th Cir. 2015).

21. In November 2022, Defendant disputed its contribution compliance audit for the period from April 1, 2019 through June 30, 2022 on the same basis of a side-agreement with LOCAL 130 MEMBER X for non-plumbing work. (Ex. E).

22. The Funds rejected Defendant's contentions and sued Defendant in Northern District case number 22-cv-06312. (Ex. F (complaint without exhibits)).

23. Following Defendant's payment of the audit findings claimed in case number 22-cv-06312, the Funds dismissed that complaint.

WHEREFORE, the Plaintiff-Funds ask this Court to:

A. Declare Defendant obligated to contribute for each hour worked by its CBA-covered employees regardless of assigned task;

B. Enter judgment in the Funds' favor and against Defendant for the audit findings;

C. Award the Funds:

1) Their audit costs, pursuant to the CBA and Trust Agreements;

2) Attorneys' fees and costs pursuant to the CBA, Trust Agreements and 29 U.S.C. §1132(g)(2);

3) Liquidated damages and interest pursuant to the CBA, Trust Agreements, and 29

U.S.C. §1132(g)(2); or

4) Double interest pursuant to 29 U.S.C. §1132(g)(2), if greater than the interest provided in the CBA and Trust Agreements.

Respectfully submitted,
**PLUMBERS' PENSION FUND, LOCAL 130, U.A., et al.**

By: ___/s/ Andrew S. Pigott________
On of their attorneys

Gregory W. Hosé
Andrew S. Pigott
Kyle R. Sullivan
Kay Han
**GREGORIO, STEC, KLEIN & HOSÉ**
Attorney for Plaintiffs
2 N. LaSalle St., Suite 1650
Chicago, IL 60602
312/263-2343
apigott@gregoriolaw.com

# Exhibit A

# AGREEMENT

**Between**

## PLUMBING CONTRACTORS ASSOCIATION OF GREATER CHICAGO

**And**

## PLUMBERS LOCAL UNION 130 UA

June 1, 2024 through May 31, 2028

# TABLE OF CONTENTS


| | Page |
|---|---|
| ARTICLE I - RECOGNITION | 5 |
| SECTION 1.1. Parties to the Agreement | 5 |
| SECTION 1.2. Recognition Clause | 5 |
| SECTION 1.3. Union Shop | 6 |
| SECTION 1.4. Subcontracting | 6 |
| SECTION 1.5. Moonlighting | 6 |
| SECTION 1.6. Access to Premises | 6 |
| SECTION 1.7. Exclusivity | 7 |
| ARTICLE II - STRIKES AND LOCKOUTS | 7 |
| SECTION 2.1. Lockouts | 7 |
| SECTION 2.2. Employee Job Action | 7 |
| ARTICLE III - DISPUTE RESOLUTION | 8 |
| SECTION 3.1. Grievance Arbitration | 8 |
| SECTION 3.2. Joint Arbitration Board | 8 |
| SECTION 3.3. Audits | 9 |
| SECTION 3.4. Other Contract Violations | 9 |
| SECTION 3.5. Hearing | 10 |
| SECTION 3.6. Powers of the Joint Arbitration Board | 10 |
| SECTION 3.7. Indemnification of the Joint Arbitration Board | 11 |
| ARTICLE IV - WORKING CONDITIONS | 12 |
| SECTION 4.1. General Policy | 12 |
| SECTION 4.2. Reporting Accidents | 12 |
| SECTION 4.3. Employer Insurance | 12 |
| SECTION 4.4. Unsafe Working Conditions | 12 |
| SECTION 4.5. Plumbing Codes | 13 |
| SECTION 4.6. Older Workers | 13 |
| SECTION 4.7. Non-Discrimination Policy | 13 |
| SECTION 4.8. Staffing | 13 |
| SECTION 4.8(b). Metal Trades Mc-Md-Me | 15 |
| SECTION 4.9. Pipe Cutting | 16 |
| SECTION 4.10. Specifications | 17 |
| SECTION 4.11. Plumbing Supervision | 17 |
| SECTION 4.12. Rule Violators | 17 |
| SECTION 4.13. OSHA and HAZCOM Training | 17 |
| SECTION 4.13(b). OSHA 30 Hour for Construction | 18 |

Page
SECTION 4.14. OSHA and HAZCOM Violations ... .. 18
SECTION 4.15. Automobile Not Required ................ .. 18
SECTION 4.16. Work Connected Expenses ................ 18
SECTION 4.17. Travel Expenses ................................ 18
SECTION 4.18. Tool Provision.................................. 19
SECTION 4.19. Clothing Provision ............................ 19
SECTION 4.20 Illinois or Chicago Plumbing License Renewal and Continuing Education................ .. 20

ARTICLE V - HOURS AND OVERTIME ............................... 20
SECTION 5.1. Workday and Workweek ...................... 20
SECTION 5.2. Overtime................................ ........... 22
SECTION 5.3. Show Up Pay...................................... 22
SECTION 5.4. Holidays ............................................. 22
SECTION 5.5. Shift Work .......................................... 22
SECTION 5.5(b). Stand-alone Shift Work……..... 23
SECTION 6.1. Wage Rates and Fringe Benefits .......... 23
SECTION 6.2. Supervision Wages ................................ 24
SECTION 6.3. Apprentice's Wage .............................. 25
SECTION 6.4. Pay Day........... .................................. 25
SECTION 6.5. Wage Payment .................................... 25
SECTION 6.6. Union Dues Deduction ........................ 26
SECTION 6.6(b).Political Action Fund Check Off ………. 26
SECTION 6.7. Pay at Separation ............................... 26
SECTION 6.8. Bond Requirements .............................. 27
SECTION 6.9. Prevailing Wage Payment .................... 28
SECTION 6.9(b). Prevailing Wage Reporting............... 28
SECTION 6.10.Voluntary Savings Plan Terminated ……. 29

ARTICLE VII - FOREMEN ....................................................... 29
SECTION 7.1. Foreman's Duties ................................ 29
SECTION 7.2. Foreman's Schedule ............................ 30

ARTICLE VIII - APPRENTICES.................................................... 30

ARTICLE IX - FRINGE BENEFITS.. ........... ........... ........ ......... 30
SECTION 9.1. Retirement Savings Fund ................................30
SECTION 9.2. Health & Welfare and Pension Plan..... 32
SECTION 9.3. Apprentice Trust Fund ......................... 33
SECTION 9.4. Plumbing Council (IF) ........... 34
SECTION 9.5. Group Legal Services Plan Fund ......... 35
SECTION 9.6. Industry Advancement Fund. ............... 35

Page

SECTION 9.7. Non-Deduction from Wages ................ 36
SECTION 9.8. Contribution and Deduction Due Dates... 36
SECTION 9.9. Employer Recording ............................ 37

ARTICLE X - HIRING .......................................................... 38

ARTICLE XI - ON THE JOB INJURIES .......... ............ ............ 40

ARTICLE XII - INDUSTRY COMMITTEE ............................. 40

ARTICLE XIII - JURISDICTIONAL DISPUTES ..................... 40

ARTICLE XIV -SUCCESSORS AND ASSIGNS .................... 41
SECTION 14.1. Employer Entities Bound.... ............... 41
SECTION 14.2. Successors and Assigns ...................... 41

ARTICLE XV - ANNUAL REOPENERS ................................ 41

ARTICLE XVI – SEPARABLE PROVISION.................................. 42

ARTICLE XVII – SERVICE & MAINTENANCE AGREEMENT...... ................................................... ........ 42

ARTICLE XVIII -- Duration of Agreement ...................... 42

APPENDIX A - OCCUPATIONAL JURISDICTION ................ 44

APPENDIX B - FLEXIBLE WORK DAY AND WORK WEEK..................... ................. ............. 48

APPENDIX C - WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS ................................ 51

APPENDIX C - METAL TRADES WAGE RATES.......... 51

IMPORTANT INFORMATION........................ 52

APPENDIX D - ALCOHOL AND DRUG PROGRAM ............ 52

APPENDIX E - UNITED ASSOCIATION STANDARD OF EXCELLENCE PROGRAM ....... ......... ........ .......... 52

** As used herein references to the masculine gender shall also refer to the feminine. **

# ARTICLE I
## RECOGNITION

**SECTION 1.1 Parties to the Agreement.** This Agreement is made and entered into as of June 1, 2024 between the Plumbing Contractors Association of Greater Chicago (PCA), solely for and on behalf of each of their individual members, who are duly licensed by law and bonded to engage in the plumbing business, are established in that business, intend to employ not less than two (2) journeymen or one (1) journeyman and one (1) apprentice, and hereafter are collectively referred to as "Employer" or "Employers," and Plumbers Local Union 130 UA, which is composed of competent licensed journeymen and apprentices who are duly authorized by law to install and inspect all plumbing work, and which hereinafter is referred to as "Union."

**SECTION 1.2. Recognition Clause.** The Associations and the Employers it represents in bargaining recognizes Plumbers Local Union 130 UA (the "Union") as the sole and exclusive bargaining representative for all of their employees who perform any of the work applicable within the Articles of Jurisdiction as set forth in "Appendix A" to this Agreement for which the Union has been chartered by the United Association within the City of Chicago, Illinois, Bureau, Cook, DeKalb, DuPage, Grundy, Iroquois, Kane, Kankakee, Kendall, Lake, LaSalle, Livingston, Marshall, McHenry, Putnam, Will and Woodford counties, Illinois and wherever additional geographic and territorial jurisdiction may be awarded by the United Association. . The Union recognizes the PCA as the exclusive bargaining agent of its individual member Employers with respect to their employees.

Employees covered by this Agreement shall place in position and connect all materials, appurtenances, devices, fixtures and equipment used in the construction of plumbing as well as handle, unload and distribute all of the above mentioned upon and after its arrival on the job site or premises. When fixtures or equipment are protected by covering during construction, such covering shall be put on and removed and fixtures cleaned by employees covered by this Agreement.

Employees covered by this Agreement shall do all the laying out, cutting and drilling of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with work falling under the jurisdiction of the Union.

It is understood and agreed that the foregoing Paragraphs of this Section shall not be construed as limiting the scope of bargaining unit work and that employees

covered by this Agreement shall perform all work covered by the Articles of Jurisdiction included in Appendix A which comes within the work jurisdiction for which the Union has been chartered by the United Association.

**SECTION 1.3 Union Shop.** All journeymen and apprentices who are now in the employ of the Employers covered by this Agreement, and all journeymen and apprentices who are hereafter employed by Employers covered by this Agreement, shall, as a condition of employment, become members of the Union on the earliest date provided by applicable federal law after their employment, or the effective date of this agreement, whichever is later, and shall, as a condition of employment, remain members of the Union during the term of this Agreement.

**SECTION 1.4 Subcontracting.** No journeyman shall be permitted to subcontract or accept a lump sum payment (lump) for the installation of any work under the jurisdiction of the Union. Parties violating this Section shall be penalized by their respective organizations through the Joint Arbitration Board. The Employers agree not to sublet, lump or contract for labor any work which comes under the jurisdiction of the Union with any member of the Union. Such subletting, lumping or contracting shall be considered a violation of this Agreement and summarily dealt with, in accordance with the grievance procedures of this Agreement. Nothing herein prohibits subcontracting work to MBE, WBE, and DBE as long as those entities are signatory to an Agreement with the Union.

The Employer agrees that in the event the Employer subcontracts any work coming under the provisions of this Agreement to any other person or firm, the Employer shall subcontract the same only to another Employer who is a party to this Agreement. A refusal of employees to render services upon a job site where this subsection is violated shall not be a violation of this Agreement for any purpose, nor shall such refusal be cause for discharge.

**SECTION 1.5 Moonlighting.** No employee shall be permitted to work for himself or work after hours or on Saturday, Sunday or Holidays as a self-employed Employer or work for another Employer as a subcontractor. First time violators may be summoned before the Union Executive Board in accordance with the procedures of the United Association Constitution. However, a trial shall be set for repeat offenders. Discharge from employment for repeat offenders will not be construed as a violation of this Agreement.

**SECTION 1.6 Access to Premises.** Duly authorized representatives of the Union or of the Joint Arbitration Board shall, for cause, be allowed to visit any job and/or any Employer's place of business during working hours to interview the Employer or the Employer's duly authorized representative, or the men in his

employ, to determine compliance with the Agreement, but there shall be minimal interruption to the progress of the work. Further, it is agreed that job site visits by a Union representative are without additional restrictions but that visits to the shop shall be by appointment if that is the Employer's policy.

Duly authorized representatives of the Fringe Benefit Funds shall be extended the same right, as described above, in order to inspect or audit all books and records of the Employer which pertain or relate to the Employer's compliance with this Agreement. Such records which shall be available for inspection or audit include but are not limited to payroll and time records, time books, payroll and income tax returns, blueprints, contracts, invoices, permits, and documents related to workers compensation, public liability and unemployment insurance coverage. It is understood and agreed that such visit, inspection or audit shall in no way hinder the progress of the work being performed. Should the Employer refuse to permit such inspection or audit as authorized by this Article, the Employer shall be liable for all costs and legal fees incurred by the Union or the Fringe Benefit Funds in obtaining a court order requiring the Employer to permit such inspection or audit. Such liability shall be in addition to and not in lieu of any relief or remedies available in such proceeding to the Union, or the Trustees of the Fringe Benefit Funds under any Illinois or federal law.

**SECTION 1.7 Exclusivity.** If at any time, the Union should enter into any collective bargaining agreement for its members for work described in Section 1.2 hereof, which in the opinion of the PCA (Association) contains terms and conditions more favorable than the terms and conditions contained in this collective bargaining agreement, then the Association may, upon written notification to the Union, adopt such terms and conditions, and this Agreement shall be modified accordingly.

This provision shall not apply to Kankakee & Iroquois Counties. This provision shall not apply to any national agreement or Project Labor Agreement whose terms are available to all bidders.

## ARTICLE II
## STRIKES AND LOCKOUTS

**SECTION 2.1 Lockouts.** The Employer agrees that there shall be no lockout of employees during the term of this Agreement.

**SECTION 2.2 Employee Job Action.** The Union agrees that there shall be no abandonment of work over any matter which is subject to arbitration, provided, however, that the Union may withdraw its members from the employ of, picket and/or use other lawful economic means against any Employer by reason of the

Employer's non-payment of wages, deductions or contributions or the Employer's failure to obtain, maintain in full force and effect and keep on file with the Union the requisite bond or irrevocable letter of credit and workers' compensation insurance as more fully provided under this Agreement, notwithstanding that disputes over such matters are subject to arbitration hereunder.

## ARTICLE III
## DISPUTE RESOLUTION

**SECTION 3.1 Grievance Arbitration.** Disagreements or disputes arising under or which involve interpretations of this Agreement, shall be processed and settled by arbitration in the manner set forth in this Article.

**SECTION 3.2 Joint Arbitration Board.** The parties hereto agree that all arbitrable disputes arising between them shall be submitted to a Joint Arbitration Board. The Joint Arbitration Board shall be comprised of ten (10) members, consisting of five (5) members appointed by the PCA and five (5) members appointed by the Union. A quorum of the Joint Arbitration Board shall consist of at least three (3) Board members appointed by the PCA and at least three (3) Board members appointed by the Union. The Board shall not take any action without the presence of a quorum. Decisions of the Joint Arbitration Board shall be by a majority vote which shall consist of Fifty percent (50%) plus one (1) of those members of the Joint Arbitration Board present and voting.

The duties of the Joint Arbitration Board shall be to decide on all cases as presented and in conformity with the sections contained in this Agreement. In the event of deadlock by the Board, whereby a decision cannot be rendered, the case will be assigned to an arbitrator mutually agreeable to the Board members. In the event the Board members are unable to agree on an arbitrator, the Board shall give written notice of such inability to agree to the parties to the arbitration. Thereafter, the parties shall request the American Arbitration Association to submit a list of seven (7) arbitrators. The parties shall alternate in striking names from the list until one name remains, with the first strike to be made by the party initiating the arbitration. The person whose name remains shall be the arbitrator. The arbitrator shall have no authority to vary or ignore the provisions of this Agreement. The arbitrator's decision shall be final and binding on the parties to the arbitration. The expenses of the arbitrator shall be divided equally between the parties to the arbitration, except that no employee shall be required to pay any such expense.

The Joint Arbitration Board shall meet twelve (12) times during the calendar year, or as needed, for the purpose of considering current and new business. The reasonable and necessary expenses and costs incurred by the Joint Arbitration Board

in performing its functions under this Agreement, as authorized by the Union, The Fringe Benefit Funds and Plumbing Council Industry Fund who are entitled to payments or contributions under this Agreement, shall be paid by them in proportion to their interests out of the sums collected as liquidated damages pursuant to Article IX, Section 9.8 hereof, to the extent that such sums are available; otherwise such expenses and costs shall be borne and paid for by the parties thereto.

Within a period of thirty (30) days' time after the execution of this Agreement, the Joint Arbitration Board shall meet, organize, elect a Chairman, Secretary and Treasurer and transact any business that may properly come before the Joint Arbitration Board. The Secretary need not be a member of the Joint Arbitration Board and in that event the Secretary shall have no vote.

**SECTION 3.3 Audits.** An auditor(s) selected by the Fringe Benefit Funds shall conduct an audit to determine whether the employer is complying with his contract obligations concerning fringe benefits being paid, wages being paid, and dues deductions being paid. Such auditor(s) shall be an agent of the Fringe Benefit Funds. Audit disputes concerning wages and/or dues deductions being paid shall be heard by the Joint Arbitration Board whose decision will be final and binding. Audit disputes concerning fringe benefits shall be determined by the audit and collection policy of the Fringe Benefit Funds.

**SECTION 3.4 Other Contract Violations**. In the event of an alleged contract violation other than one which is subject to Section 3.3 of this Article, immediately above, a Business Representative or other representative designated by the Union will notify the Employer of such alleged violation and attempt to resolve the matter informally. If the matter is not resolved or if the Employer refuses to meet in a reasonable and timely fashion with the Union's Representative to resolve the matter, said representative shall notify the Secretary of the Joint Arbitration Board and the Plumbing Contractors Association of Greater Chicago in writing of the existence of a dispute.

It shall be considered a violation of this Agreement for any plumbing contractor to intentionally omit backing supports for plumbing fixtures and accessories from an appropriate bid package. Further, any plumbing foreman or superintendent who knowingly refrains from directing journeymen or apprentices under his/her charge to install all backing and accessories related to a plumbing system shall be found in violation of this Agreement. Both the Employer and the employee may be summoned before the Joint Arbitration Board for appropriate action.

A plumbing contractor must submit with their initial proposal an appropriate

bid in accordance with the above. If it is not accepted, there will be no action taken against the contractor or his employee by the Union.

**SECTION 3.5 Hearing.** After receipt of a notice of dispute under Section 3.3 or 3.4, above, of this Article, the Secretary of the Joint Arbitration Board shall send the Employer written notice of the date, time and place of a hearing before the Board with respect to the dispute, together with a copy of the written notice of the dispute. Such notice shall be provided no later than twenty-one (21) days before the scheduled date of the hearing. This said hearing notice shall include or be accompanied by a plainly stated explanation of the specific violations citing the contract sections and language that the Employer is being charged with, and shall clearly state that it is permissible for the Employer's attorney to be present at the JAB hearing and all related meetings at which the Employer is present. The Board members present at the hearing shall hear the evidence in the case and shall render a decision which it will issue in writing over the signature of the Secretary of the Board. Said decision shall be final and binding on the parties to this Agreement. The Secretary of the Board will make or direct the making of the official minutes or transcription of the hearing. No other recording of the hearing is permitted. The Employer must appear at the hearing. Appearance through an outside representative only does not constitute the Employer's appearance. If the Employer is unable to so appear at the date, time and place set forth in the notification of hearing, he shall promptly notify the Board's Secretary in writing of the reasons therefore and request a postponement. Such request for postponement must be received by the Secretary no later than the close of business of the seventh day before the time scheduled for the hearing. A request for a postponement will be granted only for good and sufficient reasons. No Employer will be granted more than one (1) postponement in the same case. If the Employer fails to appear at a scheduled hearing or at a hearing postponed to a later date at his request or if an Employer's request for postponement is not received by the Board's Secretary in the timely manner as set forth hereinabove or is denied, the Board members shall hear the case at the appointed time notwithstanding the Employer's failure to appear and shall decide the case upon the evidence before it in the same manner as set forth hereinabove, which decision shall be final and binding on the parties to this Agreement. Any decision of the Joint Arbitration Board shall be issued in writing within thirty (30) days of the hearing or within thirty (30) days of any additional information requested by the Board.

**SECTION 3.6 Powers of the Joint Arbitration Board.** The Joint Arbitration Board shall have full power to enforce this Agreement against offending employees and/or Employers by appropriate penalties or remedies including, without limitation, fines, replacement of defective work without pay, or other appropriate sanctions. The Joint Arbitration Board has the power to assess attorney

fees and costs. The Joint Arbitration Board shall have full power to summon Employers, the Union and employees covered by this Agreement against whom charges of violations have been preferred and to summon Employers and employees covered by this Agreement to testify in any manner before the Joint Arbitration Board. Such summons shall be served by registered or certified mail by the Secretary of the Joint Arbitration Board before which such dispute is pending. Such summons may compel the production of any document or the testimony of any witness which the Joint Arbitration Board deems relevant to the resolution of the case. Failure of the Employer or employees to respond when so summoned, except for valid reason, shall subject him or them to the payment of any cost incurred by the Joint Arbitration Board in connection with such failure to respond.

**SECTION 3.7 Indemnification of the Joint Arbitration Board.** The parties hereto agree that the members of the Joint Arbitration Board representing either or both of them in proceedings before such Joint Arbitration Board under the provisions of this Agreement shall be indemnified as Joint Arbitration Board members against judgment, court costs and attorney's fees incurred and/or paid by the Joint Arbitration Board members in defending any suit or legal proceeding brought against the Joint Arbitration Board members in their respective capacity to enforce any liability or alleged liability on account of any loss, claim or damage which, if established against the Joint Arbitration Board members, shall constitute a valid and collectible loss sustained by either appropriate party under the terms of this Agreement.

In the event of any other suit or action against a member or members of the Joint Arbitration Board for or on account of an act performed pursuant to the authority provided for in this Agreement, the Joint Arbitration Board may draw upon any funds which are in its hands or under its control subject to such rules and provisions as the Joint Arbitration Board may establish relating to the disposition of such funds.

In consideration of such indemnity, the Joint Arbitration Board members shall promptly give notice to the Joint Arbitration Board, and the Union and the PCA of the institution of any such suit or legal proceeding. At the request of the Union or the PCA, the Joint Arbitration Board members shall furnish copies of all pleadings and other papers therein, and at the election of either the Union or the PCA shall permit either or both to conduct the defense of such suit or legal proceedings in the name of the Joint Arbitration Board by and through attorneys of their own selection. In the event of such election the named Joint Arbitration Board member or members shall give all reasonable information and assistance other than pecuniary which shall be deemed necessary to the proper defense of suit or legal proceeding.

Joint Arbitration Board members found guilty of fraudulent or illegal conduct shall not be indemnified under this Section.

## ARTICLE IV
## WORKING CONDITIONS

**SECTION 4.1 General Policy.** The Employers agree to make all reasonable provisions for the safety and health of their employees during the hours of their employment. The Union agrees to promote in every way possible the realization of the responsibility of the individual employee with regard to preventing accidents to himself and to his fellow employees during the hours of their employment.

Any person who is, will be or was required to attend plumbing classes two evenings each week for 24 consecutive months, as a condition of membership in the Union, is mandated to complete training in HAZCOM and OSHA safety classes, or to produce proof such training has been completed. Such persons not fulfilling this obligation will not be referred out to work.

**SECTION 4.2 Reporting Accidents**. It shall be the duty of the employee in charge to report personally to both the Union and the Employer accidents involving personal injury which may occur on the job where they are employed.

**SECTION 4.3 Employer Insurance.** Employers shall carry sufficient Workers' Compensation, public liability and unemployment insurance, together with occupational disease insurance. The Employer shall provide the Union with a copy of the insurance certificates or such other proof that it has obtained and maintains in full force and effect such insurance coverage's.

**SECTION 4.4 Unsafe Working Conditions**. Employees covered by this Agreement shall not work under any of the following conditions:

1. Where the equipment, tools, ladders and/or job conditions are judged to be unsafe by the Building Trades Safety Committee.
2. For any Employer who does not carry a bond or meet the other obligations as provided for in Section 6.8 of this Agreement and have sufficient Workers' Compensation Insurance and State Unemployment Insurance. (A copy of this coverage's shall be on file in the Union Office.)
3. 125 feet above ground level unless an operable man lift is provided to transport the employee to or above that level.
4. On any job not in conformity with the safety standards promulgated pursuant to the Occupational Safety and Health Act.

5. For more than one (1) Employer at the same time.

**SECTION 4.5 Plumbing Codes.** The Employer shall comply with all plumbing codes of the various municipalities in which the work is being installed. Any violation of said plumbing ordinances shall be reported to the office of the Business Manager of the Union.

The Union reserves the right to have its Business Representatives witness all tests of any plumbing systems.

**SECTION 4.6 Older Workers**. At least one out of every five (5) Local 130 members working for the employer shall be older Local 130 members.

**SECTION 4.7 Non-Discrimination Policy**. Each Employer bound under the terms of this Agreement shall promulgate and enforce policies forbidding any sexual harassment or discrimination based on race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service.

**SECTION 4.8 Staffing**. In order to provide for the safety and health of their employees, the Employer agrees that at no time shall there be less than two (2) journeymen, or one (1) journeyman and one (1) apprentice, working in any one (1) building of any job or job site (except, however, that this provision shall not apply to jobbing work as the term is generally used in the industry). The Employer shall be the sole judge of the number of additional men required.

An Employer who employs at least one (1) journeyman may also employ one (1) apprentice for performance of jurisdictional work. A one (1) journeyman to one (1) apprentice ratio shall be maintained at all times, except as specified by this Agreement. The Working Contractor shall count as a journeyman for the purpose of establishing this ratio. This apprentice ratio shall be reviewed on an annual basis by the parties for modification on or before June 1st each year. Without agreement by the parties, the apprentice ratio shall revert to one (1) apprentice for every two (2) journeymen on June 1, 2021.

An Employer who employs at least one (1) apprentice may request one (1) metal tradesman for the performance of non-jurisdictional work. Thereafter, an employer may request one (1) additional metal tradesman for every five (5) apprentices employed. This ratio does not apply to employees in the Mc through Me classifications described in Section 4.8(b) of this Agreement.

Employers engaged in residential work relating to the service, maintenance

and construction of single family residences, garden type and walk-up residential apartments of three levels or less as well as Employers engaged in commercial and service maintenance (defined as interior plumbing not exceeding $30,000) shall be entitled to a one (1) to one (1) journeyman to apprentice ratio.

All Employers who do not employ two (2) employees, as stipulated in the area agreement, will be required to meet with the Local Union 130 Business Manager as soon as possible. The Employer will be told that he is required to comply with the terms of the agreement (with the understanding that temporary latitude may be allowed in a depressed economy).

However, during the times that the Employer is not in compliance with the Agreement:

a. Each week the Employer is required to send a written report to the Union of all jobs on which his company is working.
b. His company will be audited every six (6) months and at year end.
c. Any and all of his employees will submit an affidavit annually stating that, "to the best of his (the employee's) knowledge, he performed all the jurisdictional work completed by the shop."
d. Progress and status of these shops will be reported through the Joint Arbitration Board and violation of the agreement may result in a fine of the value of wages and fringes for all hours worked by others, other than the Journeyman.

The Union agrees to supply skilled men to the extent that they are available, to the members of the PCA, it being understood that the Union shall furnish men to all other Employers with whom it has Agreements governing wages and working conditions. When employment opportunities exist within the industry, the Union will refer men only to Employers with whom the Union has signed Agreements.

The Metal Trades Division of the Union is composed of members employed by Employers to perform tasks not requiring a plumber's license or other tasks described as non-jurisdictional work. Any employee in the Metal Trades classification is not allowed to work on any Prevailing Wage jobs. The Employers may, with the written approval of the Business Manager of the Union, hire a probationary metal trades division (M0 classification) for a period not to exceed three (3) months for the purpose of evaluating the potential new hires.

Wages for these employees are determined by the Apprentice Wage Scale. While contributions to the Fringe Benefits Funds will not be required for probationary Metal Trades Journeymen (M0 classification) hours worked by probationary Metal Trades Journeymen (M0 classification) will be shown on the

Employer's Monthly Contribution Report. Starting with the 4th month of employment, benefit contributions will be required as stipulated in Article 6.1 of this Agreement.

An employee in the Metal Trades Division may, upon the request of the Employer, enter the Apprentice Program provided the requirements of the Apprentice Committee are satisfied. Credit for hours worked as a metal tradesman toward hours required for completion of an apprenticeship will be granted with the approval of the Business Manager and the Joint Apprenticeship Committee.

**4.8(b) <u>Metal Tradesman Mc, Md, Me</u>**

Upon written approval of the Union Business Manager, the Employer may hire on a temporary trial basis a Mc program metal tradesman from any source for a maximum period of employment of twenty four (24) months. The Union Business Manager will respond with approval or denial to any such request within one (1) week. Thereafter, when retained by Employer, the employee either is promoted to Metal Trades Journeyman third year status pay and benefits, or upon applying and meeting all standards of entrance is accepted into the Plumbers 130 Apprentice Program. Any Employer hiring a metal trades employee and failing to obtain Union Business Manager's approval, upon audit, shall be required to pay all wages and fringe benefits of a Metal Trades Journeyman M6 to the Trust Funds of the Local Union back to the original date of hire.

The Employer will send written notification of the employee's metal trades class Me status at the termination of the twenty four (24) month period. During the second year of employment the individual shall make application to the earliest class available to the Local 130 JAC to become a first year probationary apprentice. Said candidate shall be required to meet all standards of entrance into the Plumbers 130 Apprentice Program.

The number of metal tradesmen class Mc – Me in the employ of a signatory employer will be permitted at a rate of one (1) metal trades Mc – Me to one (1) apprentice to one (1) journeyman. All three are classifications covered by the Collective Bargaining Agreement and Appendix C thereto regarding wages, benefits and employment progression.

**<u>Mc Classification-0-3 Months</u>**

The wages paid to the metal trade's class Mc employee will be twenty-six percent (26%) of the then current Building Trades Journeyman Plumbers rate at time of hire during months 0 – 3 of the probationary period

During this probationary period he shall receive no fringe benefits or payroll deductions and all contributions and payroll deductions will be paid in accordance with Appendix C.

**Md Classification- 4-12 months**

With completion of probationary period this employee becomes a union member. Employee's wages remain at 26% of the then current Building Trades Journeyman Plumbers rate, fringe benefits and payroll deductions to be paid in accordance to Appendix C.

**Me Classification – Year 2**

Upon the employees' anniversary date of hire, the rate of pay shall be thirty (30%) of the then current Building Trades Journeyman Plumbers rate; benefits to be paid in accordance to Appendix C.

**Mc – Me Classification**

Mc – Me Class employees shall not perform tasks requiring a plumbers license.

The Section 9.1 Retirement Savings Fund, a defined contribution plan (DC plan) will be the sole pension plan under this Section 4.8(b).

Upon entrance in the Plumbers 130 apprentice program, wages and fringe benefit levels shall continue under Appendix C until the attainment of a City of Chicago or State of Illinois Journeyman Plumbing License or at the M3, M4, M6 or M7 rates if retained in employment.

**SECTION 4.9 Pipe Cutting.** All sizes of pipe shall be cut and threaded and/or welded and fabricated by employees covered by this Agreement. There shall be no restrictions on the use of power equipment. Where it is impractical or a hardship to cut, thread, or weld pipe on the job in the opinion of the Employer involved, such pipe may be cut, threaded or welded and fabricated in the shop. Flashings and air chambers shall be made on the job or in the shop by journeymen plumbers and/or apprentices covered by this Agreement. Such cutting, threading, and/or welding, fabrication and making of flashings and air chambers shall be performed by journeymen and apprentices of the Union.

All pipe, hanger rod and fabricated piping of any size which is cut in the shop of the Employer or in any approved Employer's shop covered by this Agreement shall be labeled by the journeymen performing the work. The journeymen who obtain the labels from the office of the Business Manager of the Union shall be held accountable for said labels.

All sizes of pipe shall be cut and threaded by employees covered by the Collective Bargaining Agreement of Local Union 130, except for pipe nipples which are defined as lengths of 10 inches or less.

**SECTION 4.10 Specifications.** Specifications and contract information forms shall be distributed by the Union to all Employers. The Employer shall complete these forms for all jobs above Two Hundred Thousand Dollars ($200,000.00) for which he has received a signed contract and within ten (10) days after receipt of such signed contract shall forward a copy of the form to the office of the Business Manager of the Union. Intentional falsification of information on these forms shall constitute a violation of this Agreement.

**SECTION 4.11 Plumbing Supervision**. It is understood that for the purpose of maintaining a proper record and check on all work which comes under local ordinances and/or the Illinois Plumbing License Law such work should be done under the supervision of a licensed and bonded Plumbing Contractor, and by licensed journeymen and apprentices and to protect the public against unsanitary installation by unqualified men, it will not be considered a violation of this Agreement for any journeyman to adhere to the rules of the Union. Nothing shall be incorporated in the "Working Rules" of the Union that conflict in any way with the provisions of the Agreement.

**SECTION 4.12 Rule Violators**. Any employee having charge of work who is taken out of a shop for violation of Union rules shall be required to remain one (1) working week of forty (40) hours in an advisory capacity if the Employer so desires, the case to be entitled to a hearing as provided in Article III of this Agreement.

**SECTION 4.13 OSHA and HAZCOM Training**. The Employers will be supplied a referral of Employees with certificates of completion of HAZCOM and OSHA education courses.

The Union and Employers will require that all members be certified in HAZCOM and OSHA. Members will have to get certified through night school. It will not be a violation of this Agreement for any Employer to reject a Union member for employment if he lacks these certifications. Classes in both OSHA and

HAZCOM will be offered regularly at the Local 130 JAC Training Centers. It shall be the responsibility of the Employee, the Union and the Employer to maintain documentation of the individual's OSHA and HAZCOM certification, and any other pertinent industry related certifications.

A referral slip, arrived at from a computerized database, will reflect certification in these areas.

Jobbing and service repair class, to be taught at day and night school, will be jointly developed to help in this market recovery or retention effort.

**SECTION 4.13(b) OSHA 30 Hour for Construction.** In the case when a job site requires a member to earn OSHA 30 certification, the contractor shall cover the cost of the training. The member may complete the training on his own unpaid time. Training may be completed using an OSHA-approved online course, or at an OSHA-approved training facility of the member's choosing, provided the employer has provided approval in advance.

**SECTION 4.14 OSHA and HAZCOM Violations.** A written citation will be issued by the Employer to the employee for each violation of OSHA and HAZCOM requirements and a copy will be sent to the Union. An employee can be terminated immediately for willful violations of OSHA and HAZCOM standards.

The offending employee will be summoned before the Union Executive Board upon receiving a third citation and appropriate action will be taken. He will also be apprised that upon receipt of a fourth citation the matter will be turned over to the Joint Arbitration Board for disposition that may result in the employee sharing in the amount of the Employer's fines.

**SECTION 4.15 Automobile Not Required.** No journeyman shall be required to furnish his automobile or any other conveyance for any purpose other than to transport himself to and from the job.

**SECTION 4.16 Work Connected Expenses.** All expenses incurred by an employee in telephoning or otherwise connected with his work shall be paid by the Employer.

**SECTION 4.17 Travel Expenses.** There will be no travel expense for work performed within the jurisdiction of the Union except when prefabrication of work is performed outside the Union's jurisdiction. A journeyman so employed in a fabrication shop will be reimbursed in the same amount per mile as established from time to time by the Internal Revenue Service for determining the standard mileage

rate method of calculating deductible employee automobile business expenses. Said reimbursement shall be calculated from the jobsite to the place of fabrication and back to the job site. However, if any Employer provides transportation for employees working under this Agreement to a fabrication site to perform work, then no travel expense shall be assessed or charged against such Employer.

When employees are required to secure lodging, all reasonable lodging and meal expenses shall be paid by the employer upon presentation of receipts, per IRS guidelines.

**SECTION 4.18 Tool Provision.** The journeymen shall furnish small pliers and rule. All journeymen and apprentices shall be in possession of a valid journeyman or apprentice Plumbing License at all times. All other tools shall be furnished by the Employer. No journeymen shall be allowed to carry tools or materials belonging to the Employer in the journeyman's automobile, with one exception; that exception is that an employee whose automobile is covered by his own automobile insurance policy may voluntarily agree to carry hand tools, including sawsall, electric drill (1/2" or smaller), hand torch without tank, radio (communication type), and pipe wrenches not to exceed 18". Should an employee voluntarily agree to carry any hand tools on behalf of his Employer, the Employer shall pay any additional insurance cost necessary to make the employee's existing automobile insurance coverage apply to this business use. The Employer may keep a record of his tools to guard against loss or damage to his equipment. Journeymen who receive tools from their Employers shall be responsible for such tools and make good for any tools lost by said journeymen. The Employer will countersign the receipt and provide the employee with a copy. Upon return of the tools both parties will sign off on a dated receipt indicating which if not all the tools have been returned. The Union will require journeymen to replace or pay for lost or missing tools furnished by their Employer and for which the latter holds a receipt from his journeymen. Should a dispute arise with respect to compliance with the requirements of this Section, the matter shall be promptly brought before the Executive Board of the Union for resolution. If a satisfactory resolution is not obtained before the Executive Board, then the matter shall be referred to the Joint Arbitration Board for final disposition.

**SECTION 4.19 Clothing Provision.** When welders are employed on a job, the Employer shall furnish protective clothing, which shall include sleeves, aprons and gloves, welding hoods, goggles, etc. The welders shall be held responsible for this clothing, except for wear and tear or if stolen from the Employer's job location. Members shall be reimbursed up to $90.00 (ninety dollars) annually upon presentation of original receipt, if required, to provide safety shoes as a condition of employment on any jobsite.

**SECTION 4.20 Illinois or Chicago Plumbing License Renewal and Continuing Education.** Journeymen or Apprentices shall maintain a valid and current Illinois or Chicago Plumbing License. It shall be a requirement of this agreement for a Local 130 Journeyman Plumber to obtain and maintain a valid and current plumbing license, to provide proof of valid 4-hour Continuing Education (C.E.) credits in a 12-month period.

## ARTICLE V
## HOURS AND OVERTIME

**SECTION 5.1 Workday and Workweek.** Eight (8) hours shall constitute a day's work as follows: 8:00 A.M. to noon and 12:30 to 4:30 P.M. on Monday, Tuesday, Wednesday, Thursday and Friday making a forty (40) hour week straight time. The workweek shall be limited to forty (40) hours per week and any and all overtime shall be only with the prior approval of the Joint Arbitration Board, except in the case of actual breakdowns of installed work falling within the jurisdiction of the Union. Such breakdowns shall be reported to the Joint Arbitration Board as soon as possible, but in no event later than 4:30 P.M. of the following business day. With the approval of the Joint Arbitration Board, the 8:00 A.M. starting time and 4:30 P.M. quitting time, specified above, may be adjusted by starting no earlier than 6:00 A.M. and no later than 9:00 A.M. with an appropriately adjusted quitting time, e.g. 6:00 A.M. to 2:30 P.M.; 9:00 A.M. to 5:30 P.M. In the case of an earlier adjusted starting time, employees shall be entitled to one-half (1/2) hour lunch break, no later than five (5) hours after the adjusted starting time.

For employees engaged in residential jobbing and repair work in a residential building of no more than three (3) stories where such work is billed to the customer on an hourly basis and not on a contract basis, any five (5) days with the exception of Sunday may constitute a workweek. The workday shall consist of eight (8) hours from 8:00 A.M. to 4:30 P.M., provided however, that the earlier starting time as provided for above is permitted. Any hours worked in excess of eight (8) hours per day shall be paid at time and one-half. All hours worked on the sixth (6th) day in any workweek other than a Sunday or a legal holiday shall be paid at time and one-half. All hours worked on Sunday or a legal holiday as provided for in Section 5.4 of this Article V shall be paid at double time. The sixth (6th) working day cannot be used as a make-up day. Except as specifically permitted by Appendix B to this Agreement governing the circumstances under which an Employer may schedule flexible hours, employees covered by this Agreement shall work the standard workday and standard workweek at straight time rates and be paid for overtime work at the overtime rates as required by this Article.

Saturday may be used as a make-up day subject to the following conditions:

a. The time being made up is due to loss of hours related to weather conditions.

b. Prior permission to work the makeup day must be obtained from the Joint Arbitration Board.

c. The decision by the employee to work must be voluntary.

**Compressed Work Week**

See Appendix B on Page 47 regarding scheduling of four consecutive ten hour days.

**SECTION 5.2 Overtime.** In the event of overtime work, as provided in Section 5.1 above, such overtime work shall be performed at the rate of time and one-half if such overtime work occurs during the period from Monday through Saturday; if overtime work occurs on a Sunday or a legal holiday, as set forth in Section 5.4 of this Article, such overtime work shall be performed at double time.

It is the intention of the parties to this Agreement that offers by Employers of overtime or other benefits for purposes of "pirating" employees covered under this Agreement, shall be deemed to be violations of this Agreement and such Employer shall be subject to the sanctions as set forth in Article III, Section 3.6 of this Agreement.

All members of the Union that work on jobs that extend into scheduled overtime shall be given preference to work the overtime. Absenteeism during the regular workweek may be cause for an Employer to deny the employee future scheduled overtime.

**SECTION 5.3 Show-Up Pay.** Any employee covered by this Agreement reporting to work upon order of any Employer who is a party to this Agreement and not put to work for any reason,* except fire, accidents, other unavoidable causes, or failure to dress properly for the type of construction on which such employee will be working, shall receive two (2) hours pay for the time lost.

*Any employee covered by this Agreement reporting for work upon order of any Employer who is a party to this Agreement and not put to work because of weather conditions, shall receive one (1) hour of pay for the time lost unless he has been previously notified not to report to work. In order to obtain the one (1) hours pay, the employee must remain on the job for that period of time.

**SECTION 5.4 Holidays.** The following days, or the day on which they are legally celebrated, shall be recognized as legal holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day. No work shall be done on these days, except to protect life and property. Veteran's Day shall be included as a recognized holiday if adopted as such by a majority of unions in the Chicago and Cook County Building Trades Council. A holiday falling on a Saturday will be celebrated on that day. A holiday falling on a Sunday will be celebrated the next day, Monday.

**SECTION 5.5 Shift Work.** For there to be shift work there must be a first shift during normal working hours. Shift work NEEDS PRIOR approval of the Joint

Arbitration Board. However, when shift work is performed, it must continue for a period of not less than five (5) consecutive working days. The second (2nd) must continue working on the continuation of the work performed by the first (1st) shift. If only two (2) shifts are working, the second (2nd) shift may be for any designated eight (8) hour period beginning after the conclusion of the first (1st) shift, but the starting time selected for the second (2nd) shift shall remain the same for the duration of the shift work.

The hourly rate of employees on the second (2nd) and third (3rd) shifts shall be fifteen percent (15%) over and above the basic hourly rate.

No interruptions shall occur in shift time except lunch and personal breaks.

**SECTION 5.5(b) Stand-alone Shift Work.** For there to be stand-alone shift work through the normal Monday through Friday work week, there need not be a first shift during normal working hours. Notification of Shift Work shall be provided to the Union Office and Association prior to commencement of work. Stand-alone shift work must continue for a period of not less than five (5) consecutive working days.

Employees on stand-alone shift work shall be paid fifteen percent (15%) above the applicable hourly rate. Shift Work does not apply when an employee works 8 hours at the basic hourly rate prior to the shift. Saturday, Sunday and Holidays are not included in stand-alone shift work and are to be paid in accordance with Article V Section 5.1, 5.2, and 5.4.

## ARTICLE VI
## WAGES

**SECTION 6.1 Wage Rates and Fringe Benefits.** The Employer hereby agrees to employ journeymen plumbers at the Union prevailing wage rates and pay the fringe benefit contributions set forth or to be determined in the manner set forth in Appendix C to this Agreement. The rates and contributions set forth therein shall be deemed the standard rates to be strictly adhered to as of the effective dates shown.

No Employer shall pay wages in excess of the rates set forth or to be determined in the manner set forth in Appendix C. Contractors (with ownership interest) may work with the tools of the trade provided that he shall pay into the Health and Welfare Fund, Pension Fund, Retirement Fund, Apprentice Training Fund, and Local 130's United Association per capita and dues check off and PCA's Industry Fund (Plumbing Council) for a minimum of thirty-two (32) hours per week

or all hours worked, whichever is greater, at the rate established for each such fund. Working Contractors shall be provided medical benefits for themselves and dependents at a rate established by the Health & Welfare Trustees and in compliance with Federal and State Legal requirements concerning Employer participation in an Employee Benefit Plan.

Newly organized members without a valid City of Chicago or State of Illinois plumbing license will be classified as metal trades and shall obtain a plumbing license within 12 months or future wage increases may be withheld. (Appeals due to extraordinary circumstances will be referred to the Joint Arbitration Board or JAC whichever is applicable). An apprentice with a minimum of 4-½ years credit who has successfully obtained either a City of Chicago or State of Illinois plumbing license shall be paid the then current journeymen wage.

Existing bargaining unit alumni/Participation Agreements of former Locals 93 and 501 and existing Local 130 Employers shall continue at the current Local 130 benefit rates and shall not be involuntarily removed.

If a working Employer ceases working with the tools but wishes to continue in the Fringe Benefit Funds, he/she must sign an Alumni Participation Agreement. Contact the Fund Office.

**SECTION 6.2 Supervision Wages.** All men who supervise and inspect work and/or who are in charge of any work that requires more than four (4) journeymen and/or apprentices shall be paid foremen's scale per Appendix C.

The Sub-foreman rate shall be 3% above the most current journeymen wage rate. All increases will be rounded to the nearest $0.05 increment.

The Foremen and Inspectors rate shall be 6% above the most current Journeymen rate. All increases will be rounded to the nearest $0.05 increment.

The Superintendents & District Foremen rate shall be 8% above the most current Journeymen rate. All increases will be rounded to the nearest $0.05 increment.

The Employer shall select said man, who shall at all times be subject to orders from the Employer or his Superintendent. This Section does not apply to repair work.

Foremen rate of pay shall prevail for any journeyman who is assuming full responsibility for any job when such responsibility is of a supervisory nature in

representing his Employer, as described in Section 7.1.

**SECTION 6.3 Apprentice's Wage**. It is understood and agreed that the wages of apprentices learning the plumbing trade and the fringe benefits to be paid on their behalf shall be as set forth or to be determined in the manner as set forth in Appendix C as of the effective dates shown thereon.

It is also understood and agreed that fringe benefits will not be paid on behalf of an Apprentice for their mandatory school day. Fringe benefits contributions will otherwise be paid according to Appendix C on all hours worked. No Industry Fund contribution will be paid on mandatory school days.

Fourth and fifth year apprentices will be required to attend additional courses as prescribed by the Joint Apprentice Committee. Wages will not be paid for attendance. However, a twenty-five dollar ($25.00) per day per diem will be paid by the Employer to offset transportation and meal expenses.

**SECTION 6.4 Pay Day**. Employee members of the Union shall be paid once each week in accordance with Section 6.5 on the regular established pay day of the Employer. In no event, may the regular pay day be more than four (4) working days after the day on which the Employer's workweek ends. If the regular pay day should fall on the same day as a legal holiday (as set forth in this Agreement), the employee shall be paid on the workday immediately preceding the legal holiday.

**SECTION 6.5 Wage Payment.** No member shall accept wage payment in cash, but shall only accept payment by check, either paid directly to the employee or by direct deposit to the employee's designated bank account, so that a full and complete record of wages, withholding taxes, social security, pension and welfare contributions and any other deductions required by this Agreement will be readily available.

Any Employer who fails to have sufficient funds in the bank to cover all paychecks issued to employees will be denied the privilege of paying by the normal payroll checks, and must pay all future payroll by certified check only until such time as the Union gives the Employer written notice that it is satisfied that the Employer is financially responsible and, therefore, able to resume payment of payroll by non-certified check. In the event of an Employer's failure to pay the wages provided for in this Agreement or failure to comply with the term of this Section 6.5, the Union shall have the right without giving notice to withdraw its members from

the employ of, to picket and/or take other lawful economic action against such Employer in order to compel the payment of wages or compliance with this Section 6.5, such withdrawal of employees, picketing and/or lawful economic action shall not be considered a violation of this Agreement on the part of the Union and shall not be a subject of arbitration. If employees are withdrawn from any job or if the Union strikes in order to compel an Employer to fulfill its obligations under this Section, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or any action taken by the Union under this Section.

**SECTION 6.6 Union Dues Deduction**. The Employer agrees that each payroll period it will deduct any authorized deductions owed to the Union for said payroll period from the wages of employees who are covered by this Agreement and who have authorized such deductions, by an authorization which is in accord with applicable law. The Employer shall remit to the Union the amount so deducted at the same time and accompanying all contributions and payroll deductions listed on Appendix C. All such remittances shall be sent to the Benefit Funds by a single check payable to the Plumbers' Local 130 Contribution Account.

**SECTION 6.6(b) Political Action Fund Check Off.** Each Employer agrees to deduct amount authorized in accordance with Appendix "C" (or such other uniform amount upon notice from the Local Union and authorization in writing from individual employees) for each hour worked, from the wages of those employees who authorize the deduction of this amount as a political action contribution, by signing a check-off authorization card. This amount shall be transmitted to the Benefit Funds on a weekly or monthly reporting basis and shall be accompanied by a list of names of those employees for whom such deductions have been made and the amount deducted for each such employee. These contributions are voluntary in nature and will be transmitted by the Local Union to an affiliated political action committee.

**SECTION 6.7 Pay at Separation.** If an employee is to be laid off or discharged, except for cause, he shall be so notified and paid off in full, at least one-half (1/2) hour before the established quitting time. Should the Employer require the employee to be laid off or discharged to receive his check at the office of the Employer, the employee shall be allowed two (2) hours at regular pay. Should the employee not be paid promptly upon arrival at the office of the Employer, he shall be paid at the regular hourly rate of pay for all time in waiting. Employees covered by this Agreement, who leave an Employer of their own volition, may wait until the regular pay day of the current week to collect wages due.

**SECTION 6.8 Bond Requirements.** Each Employer shall be required to obtain, maintain, in full force and effect and keep on file with the Union and the Benefit Funds either a dual bond or two separate bonds, or an irrevocable letter of credit, to secure all monetary obligations pursuant to the following schedule.

| Number of Employees | Amount of Bond |
|---|---|
| 0 to 2 | $25,000 |
| 3 to 5 * | $50,000 |
| 6 to12 | $125,000 |
| 13 to19 | $200,000 |
| 20 to 39 | $300,000 |
| 40 to 69 | $600,000 |
| 70 to 99 | $800,000 |
| 100 to 149 | $1,200,000 |
| 150 and above | $1,500,000 |

*Mandatory bond or irrevocable letter of credit required for 3 or more men.

The bond(s) or irrevocable letter(s) of credit will be for the total amount currently set forth above. The Employer shall acquire a wage bond covering wages, assessments, and employee authorized deductions, for 50% of that total, as well as a fringe benefit bond for 50% of the total required bond. In lieu of having two bonds, an employer may acquire a dual bond with separate Liability Limits such that 50% of the dual bond will cover wages, assessments, employee authorized deductions and the other 50% of the dual bond shall cover the remaining fringe benefit funds set forth in the Collective Bargaining Agreement in Article IX. Notices required regarding termination or modification of these instruments must be sent to both the Union and the Benefit Funds.

The Employer shall provide the wage bond to the Union and shall provide the fringe benefit bond to the Benefit Funds. A dual bond shall be provided to both the Union and the Benefit Funds with one original to the Union and a Certified Copy to the Benefit Funds.

Each Employer shall obtain the bonds required by this Section with a minimum rating of "B" according to the Best or Moody rating service. In lieu of such bonds, the Employer may obtain irrevocable bank letters of credit to secure such obligations in such form and on such terms as determined by the Union. This letter of credit shall be held in the Union's possession with a Certified Copy provided

to the Benefit Funds. An Employer who employs less than three (3) men and is unable to obtain such bond or irrevocable letter of credit shall make payment of wages and all deductions and contributions required by this Agreement on a weekly basis. Weekly reports and payments of all contributions and deductions provided for in this Agreement are due on Thursday of the week following the week for which they are owed.

In the event an Employer that is not subject to a mandatory bond or irrevocable letter of credit fails to secure a bond or irrevocable Letter of Credit, an agent of the Employer must sign a personal note and guarantee to be jointly and severally liable along with the company for all wages and fringe benefits that become due during the weekly period.

In the event of an Employer's failure to comply with the obligations imposed by this Section, the Union shall have the right to withdraw its members from the employ of, to picket and/or to use other lawful economic means against such Employer in order to compel compliance herewith. Such withdrawal of employees, picketing or other lawful economic actions shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration. In no event, will members of the Union be permitted to work for an Employer who does not fulfill the requirements and obligations set forth in this Section.

Further, an Employer who fails to comply with the obligations imposed by this Section shall also be liable to the employees, Union, Trust Funds and other entities, as the case may be, for the payment of liquidated damages in the amount(s) equal to the monetary obligation(s) due and owing them or any of them which the bond or letter of credit required by this Section are designed to secure. The Joint Arbitration Board shall have the power to award such liquidated damages in any proceeding before it which involves a violation of this Section, and such liquidated damages shall be in addition to any and all remedies available for violations of any other provision of this Agreement or under any law of the State of Illinois or the United States.

**SECTION 6.9 Prevailing Wage Payment.** Any member of another local affiliated with the UA working for a contractor signatory with Plumbers Local 130 UA, will be paid the prevailing rate of Plumbers Local 130 UA, as well as any member of Plumbers Local 130 UA working in the jurisdiction of another Local Union for a contractor signatory with Plumbers Local 130 UA.

**SECTION 6.9 (b) Prevailing Wage Reporting.** The employer may complete in conjunction with the Benefit Funds monthly payroll reports: wages, hours & job

locations for local, state or federal projects. This may include but not be limited to Davis Bacon, prevailing wage and certified payroll reports. The forms will be provided by the Union.

**SECTION 6.10 Voluntary Savings Plan. Effective June 1, 2020, this Voluntary Savings Plan is terminated.**

## ARTICLE VII
## FOREMEN

**SECTION 7.1 Foreman's Duties.** A foreman shall represent his Employer on a project to the limit of authority prescribed and given by his Employer. Within that authority he shall perform the following duties as applicable for the orderly and efficient installation of the work:

1. Supervise and coordinate the work and activity of the men;
2. Plan and schedule the work, including the necessary layout;
3. Coordinate his work with that of other trades in an orderly fashion;
4. Anticipate and arrange for the delivery of tools and materials without undue frequency;
5. Represent the Employer at job meetings and safety meetings and implement results consistent with the Employer's policy;
6. Reassign employees for the best use of their abilities, when necessary;
7. Attempt to resolve grievances at an early stage;
8. Assemble and verify the time sheets in the form prescribed by the employer
9. Update as-built drawings and instructions for the maintenance of equipment and the operation of systems;
10. Keep job log and transmit to the Employer at the conclusion of the work;
11. Stress safe working habits, and supplement all activity in Article IV of this Agreement; and
12. Give notice to the Local Union that the project or job has begun.

A foreman may supervise journeymen and/or apprentices on more than one building provided it is considered within the job site and covered by the same contract and Employer. If it is necessary for an employee covered by this Agreement to supervise work on separate job sites covered by a separate contract, he shall be rated as a Superintendent.

**SECTION 7.2 Foreman's Schedule.** The following schedule shall determine the supervision on each jobsite where the manpower reaches the ratios provided hereunder, excluding service and emergency repair.

| Journeymen & Apprentices | Sub-Foremen | Foremen | Superintendent |
|---|---|---|---|
| 4 to 9 | 0 | 1 | 0 |
| 10 to 18 | 1 | 1 | 0 |
| 19 to 25 | 2 | 2 | 1 |
| 26 to 35 | 2 | 2 | 1 |
| 36 to 45 | 3 | 2 | 1 |

## ARTICLE VIII
## APPRENTICES

ARTICLE VIII has been intentionally left blank since provisions of former ARTICLE VIII has been incorporated into Section 4.8: Staffing and Section 6.3: Apprentice's Wage.

## ARTICLE IX

## FRINGE BENEFITS

**SECTION 9.1 Retirement Savings Fund.** Effective as of the dates set forth in Appendix C, each Employer will contribute the sum per hour set forth or to be determined in the manner set forth in Appendix C for each hour worked by and on behalf of each employee covered by this Agreement to the Plumbers' Retirement Savings Fund, Local 130, UA.

Effective January 1, 2024, a 401(k) feature was added to the Plumbers Retirement Savings Fund, Local 130, UA ("Retirement Savings Fund"). To participate in the 401(k) feature, the employee must voluntarily sign an authorization form approved by the Trustees directing the Employer to reduce the employee's hourly pay by at least $0.50 per hour or multiples of $.50 per hour, up to the limit established by the Internal Revenue Code. The employee shall not direct more than the annual limit established by the Internal Revenue Code. The employee's elective deferrals shall be withheld from the employee's weekly wages and are due as provided in Section 9.8 of this Agreement. The bargaining parties agree that the first day of the

following month, consistent with Section 9.8, represents a reasonable period of time for purposes of accurately transmitting elective deferrals to the Fund Office due to the fluctuations in an employee's workweek, the wide range in administrative sophistication among the contributing employers, and to avoid inaccurate reporting.

It is expressly understood and agreed that neither the Employer nor the Union shall have any right, title, interest, or power over such money so forwarded, but that all money so forwarded, deposited or accrued shall at all times remain the exclusive property of the employee from-whose pay such deductions are made.

An Employee may change their deferral amount once per year by July 1 as determined by the Trustees of the Retirement Savings Fund. An employee may cease making salary deferrals at any time upon proper written notice to their Employer and the Retirement Savings Fund. Such employee may only resume salary deferrals on the following July 1.

For each employee electing to participate in the 401(k) feature, each Employer:

a. adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing the Plumbers' Retirement Savings Trust Fund, and any amendments made thereto as though the Trust Agreement was set forth in full including any policies or procedures promulgated by the Trustees;

b. agrees to provide the necessary participant compensation information as reasonably requested by the Plumbers' Retirement Savings Trust Fund on a timely basis consistent with the rules set forth by the Trustees of the Plumbers' Retirement Savings Fund, Local 130, UA. Such compensation shall only be used for purposes of administering the Plumbers' Retirement Savings Fund, Local 130, UA;

c. ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of the Plumbers' Retirement Savings Trust Fund, appointed from time to time in accordance with the terms of the Plumbers' Retirement Savings Trust Fund Trust Agreement; and

d. agrees to contribute pay deferral amounts elected under this Section 9.1 into the Plumbers' Retirement Savings Trust Fund, and to be bound by all amendments hereinafter made as if the Employer had signed the original

of said Trust Agreements and any Amendments from time to time or to be made.

**SECTION 9.2 Health & Welfare, Pension and Retirement Plan.** Effective as of the dates set forth in Appendix C, each Employer will contribute the sums per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Plumbers' Pension Fund, Local 130, UA and for each hour so worked to the Plumbers' Health and Welfare Fund, Local 130, UA. Under the Retirement Plan contributions for first, second and third year apprentices shall be as set forth in Appendix C. Metal Trades Mc covered by this agreement are exempt from Section 9.2.

Contributions in themselves are deemed as providing coverage as may be required by the law. Eligibility for coverage is controlled by the trust and is another matter apart and separate.

Each Employer adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing:

a. The Plumbers' Pension Fund, Local 130 UA being that Trust Agreement dated May 14, 1953; and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

b. The Plumbers' Welfare Fund, Local 130 UA being that Trust Agreement dated October 3, 1950; and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

c. The Plumbers' Retirement Savings Fund, Local 130 UA. being that Trust Agreement dated September 1, 1998, and any Amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

d. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of each of said Funds who from time to time shall be appointed as such in accordance with the terms of the Trust Agreements.

e. The Employer agrees to make the contributions required by this Section 9.2 and Appendix C into the Funds established and governed by said Trust Agreements and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust

Agreements and any amendments from time to time or to be made.

The Employer and the Union acknowledge that the Board of Trustees of the Welfare Fund may prepare and approve the necessary documents and agreements to take the necessary actions to establish in cooperation with other unrelated collectively bargained welfare funds additional wellness centers in the future in order to provide benefits for employees covered by the CBA, and agree to be bound by the terms of those wellness center agreements, as applicable; provided that such documents are in compliance with applicable laws and are otherwise not inconsistent with the CBA. Furthermore, the Employer and Union ratify all legally valid actions taken by the Board of Trustees of the Welfare Fund that are within the scope of their authority to establish the wellness centers.

It is understood the Welfare Fund is a multiemployer employee welfare benefit plan that is established or maintained under or pursuant to one or more collective bargaining agreements as defined under Sections 3(1) and 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (29 U.S.C. 1002(1), and 1002(37)), and that the welfare benefits provided to eligible participants of the Welfare Fund at the wellness centers are component benefits of the Welfare Fund.

**SECTION 9.3 Apprentice Trust Fund.** Effective as of the dates set forth in Appendix C, each Employer will contribute the sum per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Trust Fund for Apprentice and Journeymen Education and Training, Local Union 130, UA.

Each Employer adopts and agrees to be bound by the terms and conditions of the Agreement establishing and governing the Trust Fund for Apprentice and Journeymen Education and Training, Local 130, UA, being that Trust Agreement dated June 1, 1965, and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of said Fund who from time to time shall be appointed as such in accordance with the terms of the Trust Agreement. The Employer agrees to make the contributions required by this Section 9.3 and Appendix C into the Fund established and governed by said Trust Agreement and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreement and any amendments from time to time made or to be made.

**SECTION 9.4 Plumbing Council (PCA Industry Fund).** Effective as of the dates set forth in Appendix C, each Employer shall contribute the sums set forth or to be determined in the manner set forth on Appendix C for each hour worked by each employee covered by this Agreement, including apprentices, to the Plumbing Council, a not-for-profit corporation.

The desired policy and priorities of the Plumbing Council will emanate from the Council Advisory Board appointed by the President of the PCA and whose members will represent the PCA on the All Industry Committee that consists of Management and Labor representatives.

The Plumbing Council shall protect, promote, foster, and advance the interests of Employers and employees engaged in the plumbing contracting and servicing industry including, but not limited to, the following pursuits.

a. To engage in public relations programs designed to create a better public understanding of the industry and to encourage greater use of the industry's services by owners and construction and service purchasers for the benefit of the general public.

b. To cooperate with public officials and representatives of other organizations on all matters of mutual interest affecting the construction industry.

c. To foster and promote better Employer/employee relationships and to strive for optimum efficiency and workmanship in construction methods.

d. To foster and provide for the education and training of supervisory and managerial personnel.

e. To promote research and experimentation concerned with improving existing construction methods and developing, testing and promoting new construction materials and/or modes of construction.

f. To promote safety in the plumbing contracting industry by developing programs and activities directed at assisting, technically or otherwise, architects, engineers, specification writers, general contractors, and governmental authorities and agencies, in the formulation or improvement of federal, state, and municipal regulations and other technical and safety programs having as their object the safe, adequate and improved quality of plumbing contractors' service to the public.

g. To support the activities and programs of the PCA including collective bargaining and related matters.

h. To foster and promote compliance with all laws, regulations, and orders concerning affirmative action and equal opportunity for employment.

i. To engage in all other acts consistent with the purposes and terms of this Agreement and with the laws of the State of Illinois.

j. No part of the Industry Funds shall be used for any purpose which tends to restrain or limit competition.

k. To support public officials who support legislation beneficial to Plumbing Contractors.

The parties agree that since the Plumbing Council is an industry fund, proposals related to it are permissive subjects of bargaining. While the PCA has agreed that the "pursuits" of the Plumbing Council, as described in the Plumbing Council By-Laws adopted January 12, 2016, are to be included in the Collective Bargaining Agreement, that inclusion should not be construed as a waiver of the PCA's position that this entire subject is "permissive" and should not be construed as any restriction on the Plumbing Council's right to interpret, amend or change its By-Laws including the "pursuits" recited therein.

Any amendment, change, or alteration of the existing Plumbing Council By-Laws adopted January 12, 2016 including "the pursuits" recited therein will not in any way alter, amend, change or affect the provisions of Section 9.4, par. 3 of the Collective Bargaining Agreement for the term of this Agreement.

**SECTION 9.5 Group Legal Plan.** Effective June 1, 2014, the Group Legal Services Plan was terminated. The 64¢ per hour employer contributions was allocated to the Retirement Savings Plan (Pension Defined Contribution Plan), as designated by the Union.

**SECTION 9.6 Industry Advancement Fund.** The Union agrees to Management's participation in industry advancement funds and will participate as a partner in proposed industry dialogues.

**SECTION 9.7 Non-Deduction from Wages.**

a. Contributions provided under Sections 9.1, 9.2, 9.3 and 9.4 shall not be deducted from the wages of the employees.
b. Effective as of the dates set forth in Appendix C of this Agreement, each Employer will contribute the sums per hour set forth or to be determined in the manner set forth in Appendix C for each hour worked excluding time spent in training or education required by the Employer with prior approval of the Joint Arbitration Board by and on behalf of each employee covered by this Agreement.

**SECTION 9.8 Contribution and Deduction Due Dates.** Except as provided in Section 6.8 for an Employer who is unable to obtain a bond or irrevocable letter of credit, all contributions and deductions provided for in this Agreement are due the first (1st) day of the month following the month for which they are owed. However, contributions and deductions received by the Benefit Funds by the fifteenth (15th) day of that month will not be subject to interest and liquidated damage charges (e.g. contributions and deductions for the month of June are due July 1, but can be paid up to July 15 without incurring interest and/or liquidated damage charges). An Employer who fails to make such contributions and deductions by the 15th day of the month in which they are due, shall pay, in addition to the actual delinquent amounts, interest thereon beginning with the due date at the rate of a minimum of eight percent (8%) per annum or Prime plus three percent (3%) whichever is higher and liquidated damages in the amount of eight percent (8%) on the cumulative outstanding balance due. The costs of administration and collection are inherently difficult to predict. Therefore, the parties understand and agree that the liquidated damages and interest provided herein are reasonable estimates of those costs and not penalties. The delinquent Employer shall also be responsible for any employee's claim for Welfare benefits arising during the period of such delinquency.

If discovered that prior contributions or deductions have not been in accordance with the terms of this Agreement, the Employer advised of the discrepancy shall remit the amounts due plus the above described interest and liquidated damages.

The provisions for interest, liquidated damages, reimbursement of litigation costs, strikes, picketing and/or other remedies set forth herein and available to the Union and/or Trustees of the various Funds in the event of an Employer's breach of any obligation under this Section 9.8 and Sections 9.1, 9.2, 9.3, 9.4, 9.7, and 9.9 of this Article IX, and Sections 6.4, 6.5, and 6.6, of Article VI are cumulative and are not intended to serve and shall not serve as a substitute for or in any way limit any other remedies or relief which also may be available to the Union and/or the Trustees

under this Agreement or under any Illinois or federal law. Further, the Union's failure to exercise its rights to withdraw its members from the employ of, to picket, strike or take other lawful economic action against any Employer who violates this Section 9.8 or Sections 9.1, 9.2, 9.3, 9.4, 9.7 and 9.9 of this Article IX or Sections 6.4, 6.5, and 6.6, of Article VI, shall not be deemed a waiver on the part of the Union to exercise such right or award such remedy, respectively, in the case of any such subsequent violations by the same Employer or another Employer.

Upon five (5) days written notice by Certified Mail the Union shall have the right to withdraw its members from the employ of, to picket and/or to take other lawful action against any Employer who fails to make the required benefit contributions and/or deductions as required by this Agreement. Any employee who loses time from work because of the failure of his Employer to pay said fringe benefit contributions and/or deductions as required by this Agreement, shall be reimbursed by the Employer for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or other action taken by the Union under this Section. Such withdrawal of employees, picketing and/or other lawful economic action shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration.

In the event an Employer shall default in the payment of any contributions or deductions provided for by the terms of this Agreement, it shall be considered the same as failure to pay wages.

**SECTION 9.9 Employer Recording.** Each Employer shall file with the Benefit Funds on a reporting form to be devised by the Funds (breakdown and monetary allocations provided by the union), on or before the due date for the remittance of contributions and deductions, an itemization of the money payments required to be paid by the Employer covered by said report under the terms of this Agreement. The Fringe Benefit Funds shall have the right to inspect Employer's payroll records as well as the other records described in Section 1.6 of this Agreement, for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to Fringe Benefit Fund contributions being paid. The Employer shall make such books and records available at reasonable business times and hours, at the option of the Fringe Benefit Funds, to a representative of a certified public accountant designated by the Benefit Funds. The Employer shall retain payroll records including but not limited to time sheets for a period of ten (10) years. The Union shall have the right upon two (2) days written notice by Certified Mail to withdraw its members from the employ of, to picket and/or to take other lawful economic action against any Employer in order to compel the Employer to make such books and records available. If employees are withdrawn from any job or if the Union

strikes in order to compel an Employer to make such books and records available, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay. Such withdrawal of employees picketing and/or other lawful economic action to compel an Employer to make his books and records available shall not be considered a violation of this Agreement on the part of the Union and it shall not be a subject of arbitration.

Employer shall file with the Union on a reporting form to be devised by the Union, on or before the due date for the remittance of union dues deductions, an itemization of the payments required to be paid by the Employer covered by said report under the terms of this Agreement. The Union shall have the right to inspect Employer's payroll records for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to the contract rate of wages and union dues deductions being paid. The Employer shall make such books and records available at reasonable business times and hours, to the Union. The Union shall have the right upon two (2) days written notice by Certified Mail to withdraw its members from the employ of, to picket and/or to take other lawful economic action against any Employer in order to compel the Employer to make such books and records available. If employees are withdrawn from any job or if the Union strikes in order to compel an Employer to make such books and records available, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay. Such withdrawal of employees picketing and/or other lawful economic action to compel an Employer to make his books and records available shall not be considered a violation of this Agreement on the part of the Union and it shall not be a subject of arbitration.

## ARTICLE X
## HIRING

Each member shall request a referral slip from the Local Union office when changing jobs and present same to his new Employer. If a member does not obtain said referral slip, he may be cited before the Executive Board of the Union. The Employer may be held responsible to the Joint Arbitration Board for anyone he hires and puts to work without a referral slip. The Union shall refer applicants for employment according to the following minimum standards:

1. The selection of applicants for referral to any job shall be on a nondiscriminatory basis and shall not be based on or in any way affected by the applicant's race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service in accordance with relevant Illinois, local, and federal law.

2. The Employer shall have the sole and exclusive right of accepting or rejecting applicants for work and need not give preference or priority to applicants referred by the Union.

3. The selection, hiring, supervision and training of all apprentices shall be subject to the rules and control of the Plumbers' Joint Apprenticeship Committee LU 130 UA, and further shall be subject to the Provision of Article X, Paragraph 1 of this Agreement.

4. All referral slips must contain the following information:

   a. The employee's name, United Association number, the last four digits of the social security number, plumbing license number (if applicable), address, telephone numbers, and e-mail address (if available);

   b. The employee's certifications, i.e., the required four (4) hours of Illinois or Chicago-approved Continued Education (CE) credit each year, OSHA, HAZCOM, competent person, safety course, cross connection and backflow license, etc.;

   c. The Employer's name, address, telephone number, the location, date and time to report, and whom to contact at that location.

   d. A copy of the referral slip must be signed by the employee and a copy of the referral slip will be provided to the Employer.

NOTE: The Plumbing Council of Greater Chicago and the PCA will notify all contractors of the requirement of requesting a referral slip from all new hires. This requirement will also be a subject of discussion at an All Industry meeting.

5. When the Union does not furnish qualified persons within forty-eight (48) hours (Saturdays, Sundays and holidays excluded) of the initial request, the Employer shall be free to obtain people from any source. In doing so the Employer shall be permitted to hire persons. It is understood that preference for such employment shall be given to journeymen with previous experience in the plumbing industry.

## ARTICLE XI
## ON THE JOB INJURIES

Employees covered by this Agreement who, as a result of injuries received on the job, are required to obtain medical aid for such injuries, shall be reimbursed for said time spent in obtaining medical aid. If the Employer's doctor or Employer's insurance company doctor makes available to the injured employee evening or non-working hours for further aid or treatment of an injury, which will not cause a loss of regular work time, then said employee shall arrange to have all further visits to the doctor scheduled for non-working hours.

## ARTICLE XII
## INDUSTRY COMMITTEE

The parties hereto agree that it is in the mutual interest of those engaged in the plumbing industry to have a formal mechanism to deal with issues which concern the industry and which affect the interests of the Employers and Union and employees represented by the Union who are parties to, bound by or covered by this Agreement. Therefore, the parties hereto agree to establish an All Industry Committee to meet, discuss and deal with such issues. Said Committee shall be composed of the President of the PCA; two (2) members appointed by the President of the PCA who shall be Employers and who shall serve in an advisory capacity to the Plumbing Council of Greater Chicago; the Union's Business Manager; and three (3) members appointed by the Business Manager from among the officers of the Union. Co-Chairmen shall be elected (one Labor and one Management) from the designated members of the Committee. The Committee shall meet from time to time as determined by the Co-Chairmen.

All meeting expenses and costs shall be shared equally by the PCA and the Union. The expenses and costs incurred by either the PCA or the Union in connection with any action or undertaking by those respective parties related to or arising out of any matter considered by the Committee shall be borne by the party taking such action.

## ARTICLE XIII
## JURISDICTIONAL DISPUTES

The Employer and Union agree that in the event of any jurisdictional dispute between the Union and another labor organization bound by the Standard Agreement establishing the Joint Conference Board of the Construction Employers' Association and the Chicago and Cook County Building Trades Council with respect to any work

at or related to any site or project within Cook County, Illinois at which the Employer is engaged or is to be engaged as a contractor or a subcontractor or to perform any work, said dispute shall be submitted to said Joint Conference Board for final and binding resolution pursuant to said Standard Agreement and the Board's procedures there under. The Employer and Union agree to be bound by the procedures and decision of the Joint Conference Board with respect to any such dispute in accordance with said procedures.

## ARTICLE XIV
## SUCCESSORS AND ASSIGNS

**SECTION 14.1. Employer Entities Bound.** This Agreement is binding upon the Employer regardless of whether he or it changes the name or address of his or its business and upon any other business entity within the trade and territorial jurisdiction of the Union which is owned, managed, controlled and/or operated by the Employer or its principals or any of them. This paragraph is intended to apply to the scope of work covered by this Agreement and shall not be construed as adding to the scope of such work.

**SECTION 14.2. Successors and Assigns**. This Agreement shall be equally binding on the Employer and its successors and assigns and it is the intent of the parties that this Agreement shall remain in effect for its full term and bind the successors of the respective parties. In furtherance of this intent, it is agreed that in the event of any sale, merger, acquisition, consolidation or any other transfer of the Employer's business, the Employer shall make it a condition of such transfer and the agreement by which any such transfer is accomplished shall provide that the transferee shall be bound by the terms of this Agreement. The Employer shall give the Union written notice of any such transfer at least ten (10) days prior to the closing date thereof and specifically advise the Union in said notice that the provisions of this Article have been complied with.

## ARTICLE XV
## ANNUAL REOPENERS

ARTICLE XV HAS BEEN INTENTIONALLY LEFT BLANK

## ARTICLE XVI
## SEPARABLE PROVISIONS

Each and every clause of this Agreement shall be deemed separable from each and every other clause of this Agreement to the end that in the event that any clause or clauses shall be specifically and finally determined to be in violation of any Illinois or federal law, then in such event such clause or clauses only, to the extent only that any may be so in violation, shall be deemed of no force and effect and unenforceable upon written notice of such invalidity from one party to the other, without such invalidity impairing the validity and enforceability of the rest of the Agreement including any and all provisions in the remainder of any clause, sentence or paragraph in which the language determined to be invalid may appear. In the event of such invalidity and notice thereof, the parties shall meet promptly at the request of either party to negotiate mutually acceptable substitute language. If the parties are unable to agree on such substitute language, either party shall be permitted to exercise all legal and lawful economic recourse in support of its demands notwithstanding any provisions of this Agreement to the contrary.

## ARTICLE XVII
## SERVICE & MAINTENANCE AGREEMENT

The Agreement recognizes that there exists a Plumbing Service & Maintenance Area Agreement, the Plumbers Local Union 130 UA Service & Maintenance Agreement. Whenever the terms of this Agreement shall conflict with the terms of the Service & Maintenance Agreement, the terms of the Service & Maintenance Agreement shall control.

## ARTICLE XVIII
## DURATION OF AGREEMENT

The Collective Bargaining Agreement between the Plumbers Local Union 130 UA and the PCA shall be in effect between June 1, 2024 through May 31, 2028, and thereafter for successive yearly periods, unless written notice to terminate or with its intention to modify the Agreement is received, by certified mail- return receipt requested, no more than ninety (90) days but no less than sixty (60) days prior to the expiration date of any such then current Collective Bargaining Agreement.

This Agreement is hereby executed as of the 1st day of June 2024.

PCA of Greater Chicago

Kelly Castrogiovanni
Co-Chairman of Labor Relations Committee
President, PCA of Greater Chicago

Brian Kennedy
Labor Relations Committee

Mike Kerrigan
Co-Chairman of Labor Relations Committee

Paul Aleck
Labor Relations Committee

John Baethke
Labor Relations Committee

S.J. Peters
Labor Relations Committee

PLUMBERS LOCAL UNION 130 UA

James F. Coyne
Business Manager

Michael E. Shea
Business Representative

Patrick F. McCarthy
Recording Secretary

Patrick C. Brooks
Lead Organizers/Business Representative

John P. Hosty
Business Representative

# APPENDIX A
# OCCUPATIONAL JURISDICTION

Plumbers Local 130 UA will aid and assist all Local 130 signatory contractors in any and all jurisdictional disputes that arise over work included in the jurisdiction list.
The following shall constitute the occupational jurisdiction of work of the Union:

1. All piping for plumbing, water, waste, floor drains, drain grates, supply, leader, soil pipe, grease traps, sewage and vent lines.
2. All piping for water filters, water softeners, water meters and setting of same.
3. All cold, hot and circulating water lines, piping for house pumps, cellar drainers, ejectors, house tanks, pressure tanks, swimming pools, Ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances and the handling and setting of the above mentioned equipment.
4. All water services from mains to buildings, including water meters and water meter foundations.
5. All water mains from whatever source, including branches and fire hydrants, etc.
6. All down spouts and drainage areas, soil pipe, catch basins, manholes, drains, gravel basins, storm sewers, septic tanks, cesspools, water storage tanks, etc.
7. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and washrooms, shower stalls, etc.
8. All bathroom, toilet room and shower room accessories, i.e., as towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.
9. All lawn sprinkler work, including piping, fittings and lawn sprinkler heads.
10. All sheet lining (including lead lining) for X-ray rooms, fountains, swimming pools or shower stalls, tanks or vats for all purposes and for roof flanges in connection with the plumbing industry.
11. All fire stand pipes, fire pumps, pressure and storage tanks, valves, hoseracks, fire hose cabinets and accessories and all piping for sprinkler work of every description.
12. All block tin coils, carbonic gas piping, for soda fountains and bars, etc.
13. All piping for railing work, and racks of every description, whether screwed or welded.
14. All piping for pneumatic vacuum cleaning systems of every description.

15. All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil, or gas, used in connection with railway cars, railway motorcars, and railway locomotives.
16. All marine piping, and all piping used in connection with ship building and ship yards.
17. All power plant piping of every description.
18. The handling, assembling and erecting of all economizers and superheaters, regardless of the mode or method of making joints, hangers and erection of same.
19. All internal and external piping on boilers, heaters, tanks and evaporators, water legs, water backs and water grates, boiler compound equipment, etc.
20. All soot blowers and soot collecting piping systems.
21. The setting, erecting and piping, for all smoke consuming and smoke washing and regulating devices.
22. The setting, erecting and piping of instruments, measuring devices, thermostatic controls, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, mining and industrial work.
23. The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers, and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling, distilling and brewing plants, heating, ventilating and air conditioning systems.
24. All piping for artificial gases, natural gases and holders and equipment for same, chemicals, minerals and by-products and refining of same, for any and all purposes.
25. The setting and erecting of all under-feed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping and accessories and parts of burners and stokers, etc.
26. All ash collecting and conveyor piping systems, including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.
27. The setting and erection of all oil heaters, oil coolers, storage and distribution tanks, transfer pumps, and mixing devices, and piping thereto of every description.
28. The setting and erecting and piping of all cooling units, pumps, reclaiming systems and appurtenances, in connection with transformers, and piping to switches of every description.
29. All fire extinguishing systems and piping; whether by water, steam, gas or chemical, fire alarm piping, and control tubing, etc. All piping and accessories for residential and multi-purpose fire sprinkler systems.

30. All piping for sterilizing, chemical treatment, deodorizing and all cleaning systems of every description and laundries for all purposes.
31. All piping for oil or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.
32. All piping for power, or heating purposes, either by water, air, steam, gas, oil, chemicals or any other method.
33. All piping, setting and hanging of all units and fixtures for air conditioning, cooling, heating, roof cooling, refrigerating, ice-making, humidifying, dehumidifying, dehydrating, by any method, and the charging and testing, servicing of all work after completion.
34. All pneumatic tube work, and all piping for carrying systems by vacuum, compressed air, steam, water, or any other method.
35. All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers and boilers and cooking utensils, etc. of every description.
36. All piping in connection with central distribution filtration treatment stations, boosting stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground supply lines to cooling wells, suction basins, filter basins, settling basins, and aeration basins.
37. All process piping for refining, manufacturing, industrial and shipping purposes, of every character and description.
38. All air piping of every description.
39. All temporary piping of every description in connection with building and construction work, excavating and underground construction.
40. The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with the plumbing industry.
41. The handling and setting of boilers, setting of fronts, setting of soot blowers, and attaching of all boiler trimmings.
42. All pipe transportation lines for gas, oil, gasoline, fluids and liquids, water aqueducts, and water lines and booster stations of every description.
43. All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, caulked joints, expanded joints, rolled joints or any other mode or method of making joints in connection with the plumbing industry.
44. Laying out, cutting, bending and fabricating of all pipework of every description, by whatever mode or method.
45. All methods of stress relieving of all pipe joints made by every mode or method.
46. The assembling and erecting of tanks used for mechanical, manufacturing or industrial purposes, to be assembled with bolts, packed or welded joints.

47. The handling and using of all tools and equipment that may be necessary for the erection and installation of all work and materials used in the Plumbing Industry, including, but not limited to, forklifts, end loaders, winch trucks, A- frames and hoists, drill rigs, backhoes, skid steers, power shovels, trench hoes, tuggers, tampers and generators, provided these engines and equipment are used in conjunction with the other work covered by this Agreement as a time- saving device.

48. The operation, maintenance, repairing, servicing and dismantling of all work installed by journeymen under this Agreement.

49. All piping for cataracts, cascades, i.e., (artificial water falls), make-up water
fountains, captured waters, water towers, cooling towers, and spray ponds, used for industrial, manufacturing, commercial, or any other purpose.

50. Piping herein specified means pipe made from metals, tile, glass, rubber, plastic, wood, or any other kind of material or product manufactured into pipe, usable in the plumbing industry, regardless of size or shape.

51. The installation and testing of backflow preventors.

52. All Sustainable piping systems of every description. Not limited to the collection and use of greywater, rainwater/storm water, recycled water,
reclaimed water, Black water, and any type of non-potable water, pipe fittings,
basins, cisterns, equipment, pumps, tanks, filters, screens, sanitizing, controls and appurtenances, etc., new construction, alteration, repair and maintenance.

53. All field layout, locating of plumbing, superintending, installation, maintenance and repair with respect to plumbing. Not limited to the use of
robotic total stations or other similar equipment to locate and lay out all plumbing systems within the building.

# APPENDIX B
# FLEXIBLE WORKDAY AND WORKWEEK

Except as specifically permitted under the following provisions of this Appendix B governing flexible workdays and the flexible workweek, employees covered by the Agreement to which this Appendix B is attached shall work the standard workday and standard workweek at the straight time rates and be paid for overtime work at the overtime rates as provided in Section 5.2 of the Agreement.

1. Only Employers who employ apprentice plumbers may be permitted to utilize a flexible workday or a flexible workweek. An adequate quantity of competent apprentices are available through the Joint Apprenticeship Committee.

2. The flexible workday and flexible workweek are not permitted for any work done on a contract basis. They are permitted only under the terms further specified herein below for residential, commercial or industrial jobbing repair and/or service work billed to the customer on an hourly basis.

3. No employee may be scheduled for or required to work more than eight (8) flexible hours in any workweek.

4. The flexible workday, Monday through Friday, consists of up to eight (8) consecutive hours between 6:00 A.M. and 8:30 P.M., exclusive of a one-half (1/2) hour unpaid meal break to be taken no later than five (5) hours after the employee's starting time; provided, however, that in no event may such a flexible workday start later than 12:00 P.M. (noon).The pay rate for flexible hours worked before the regular starting time for the Employer's shop (i.e. 6:00 A.M. or 9:00 A.M.) and after the regular quitting time (i.e. 2:30 P.M. or 5:30 P.M.) shall be the regular straight time hourly rate plus fifteen percent (15%). All hours worked on such days in excess of eight (8) hours shall be paid at one and one-half (1-1/2) times the regular straight time hourly rate.

5. Eligible Employers may schedule Saturdays as a regular fifth (5th) flexible workday in any workweek for jobbing repair and/or service work. In such cases, the Saturday flexible workday shall consist of the hours between 8:00 A.M. and 4:30 P.M., exclusive of a one-half (1/2) hour unpaid lunch break taken no later than five (5) hours after the

starting time. Employees who are required to work Saturdays as a flexible fifth (5th) workday and who are required to perform residential jobbing repair and/or service work in a residential building of no more than three (3) stories on such day shall be paid at their regular straight time hourly rate for such fifth (5th) day for such work between the hours of 8:00A.M. and 4:30 P.M.

6. Employees who are required to perform any commercial or industrial jobbing repair and/or service work or to perform jobbing repair and/or service work in a residential structure of more than three (3) stories during such hours on Saturdays shall be paid at their regular straight time hourly rate plus fifteen percent (15%) for all such hours. All jobbing repair and/or service work performed on such Saturdays before 8:00 A.M. or after 4:30 P.M. shall be paid for at one and one-half (1-1/2) times the regular hourly rate. Such Saturdays cannot be used as a make-up day. All work for which flexible time is permitted by this Appendix "B" to be performed on Sunday or a legal holiday identified as such in the Agreement shall be paid at double time.

7. **COMPRESSED WORK SCHEDULE.** Following written notice to the Union, Employer may schedule the regular work week in a compressed work schedule of four (4) consecutive ten (10) hour days at straight time rates provided the four (4) ten (10) hour work days exclusive of a one-half (1/2) hours unpaid meal break to be taken no later than five (5) hours after the employee's starting time are scheduled during the period Monday through Thursday or Tuesday through Friday and are worked within the starting times of 6:00 A.M. to 10:00 A.M. and corresponding quitting times 4:30 P.M. to 8:30 P.M. In no event will a compressed schedule work day start later than 10:00 A.M.

The overtime rate for hours in excess of ten (10) in a day on a compressed work week schedule shall be paid at time and one half (1 and 1/2) times the regular straight time hourly rate.

8. **COMPRESSED WORK SCHEDULE.** Make up day conditions will be on a voluntary basis. Employers properly adopting such work schedules may schedule Friday (on a Monday – Thursday work week) or Saturday (on a Tuesday – Friday work week) as a fourth make up day in the work week subject to the above work hour restrictions above in Paragraph 6.

Employees who work a Friday or Saturday as a fourth make up day shall be paid straight time hourly rates for the fourth day make up day work scheduled during regular working hours.

All work to be performed under a compressed work schedule on a Sunday or legal holiday identified in this Agreement (Section 5.4) shall be paid at double the applicable rate of pay.

Both the Employer and the employee(s) must agree to adopt the compressed work week option for the four (4) – ten (10) schedule.

The above compressed work week schedule excludes Prevailing Wage or Davis-Bacon work, unless allowed through a Project Labor Agreement or similar agreement.

# APPENDIX C

## WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS

The following hourly wage, fringe benefit contributions and payroll deductions rates shall be in effect as of June 1, 2024 through May 31, 2025

| | | Contributions | | | | | | Payroll Deductions | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | WAGES | Welfare | Retiree Welfare | Pension | Pension DC | JAC[2] | Plumbing Council IF[3] | Dues Check-off | Target | Building | PAC |
| **Journeymen** | $ 58.55 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 2.05 | $ 1.15 | $ 0.70 | $ 0.10 |
| **Sub-Foremen** | $ 60.30 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 2.05 | $ 1.15 | $ 0.70 | $ 0.10 |
| **3% over BT Journeymen Rate** | | | | | | | | | | | |
| **Foremen & Inspectors** | $ 62.05 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 2.05 | $ 1.15 | $ 0.70 | $ 0.10 |
| **6% over BT Journeymen Rate** (Supervising 4 or more men) | | | | | | | | | | | |
| **Superintendents or District Foremen** | $ 63.25 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 2.05 | $ 1.15 | $ 0.70 | $ 0.10 |
| **8% over BT Journeymen Rate** (Supervising 19 or more men) | | | | | | | | | | | |
| **District Superintendents** | $ 67.05 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 2.05 | $ 1.15 | $ 0.70 | $ 0.10 |
| **at least 6% above Superintendent's Rate** | | | | | | | | | | | |
| **Apprentices** | | | | | | | | | | | |
| 1st Six Months[1] | $ 19.90 | $ 10.75 | $ - | $ - | $ - | $ 1.83 | n/a | $ 0.70 | $ 1.15 | $ 0.70 | $ 0.10 |
| 2nd Six Months[1] | $ 21.65 | $ 10.75 | $ - | $ - | $ - | $ 1.83 | n/a | $ 0.76 | $ 1.15 | $ 0.70 | $ 0.10 |
| 2nd Year[1] | $ 25.75 | $ 10.75 | $ - | $ 8.04 | $ 3.95 | $ 1.83 | n/a | $ 0.90 | $ 1.15 | $ 0.70 | $ 0.10 |
| 3rd Year[1] | $ 29.25 | $ 10.75 | $ - | $ 8.04 | $ 3.95 | $ 1.83 | n/a | $ 1.02 | $ 1.15 | $ 0.70 | $ 0.10 |
| 4th Year | $ 38.65 | $ 15.75 | $ - | $ 13.04 | $ 3.95 | $ 1.83 | $ 0.26 | $ 1.35 | $ 1.15 | $ 0.70 | $ 0.10 |
| 5th Year | $ 43.90 | $ 15.75 | $ - | $ 13.04 | $ 3.95 | $ 1.83 | $ 0.26 | $ 1.54 | $ 1.15 | $ 0.70 | $ 0.10 |
| **Metal Trades Journeymen** | | | | | | | | | | | |
| M0 1st 3 Months | $ 19.90 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| M1 4th - 12th months | $ 21.65 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 0.76 | $ 1.15 | $ 0.70 | $ 0.10 |
| M2 2nd Year | $ 25.75 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 0.90 | $ 1.15 | $ 0.70 | $ 0.10 |
| M3 3rd Year | $ 29.25 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.02 | $ 1.15 | $ 0.70 | $ 0.10 |
| M4 4th Year | $ 38.65 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.35 | $ 1.15 | $ 0.70 | $ 0.10 |
| M6 5th Year | $ 43.90 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.54 | $ 1.15 | $ 0.70 | $ 0.10 |
| M7 5th Year + | $ 49.75 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.74 | $ 1.15 | $ 0.70 | $ 0.10 |
| **Metal Trades (Mc, Md, Me)** | | **Note: Md & Me Classifications Pay UA Per Capita Only[4]** | | | | | | | | | |
| Mc (0-3 months) | $ 15.20 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| Md (4 - 12 months) | $ 15.20 | $ 10.75 | n/a | n/a | $ 4.70 | n/a | $ 0.26 | [4] | $ 1.15 | $ 0.70 | $ 0.10 |
| Me (year 2) | $ 17.55 | $ 10.75 | n/a | n/a | $ 4.70 | n/a | $ 0.26 | [4] | $ 1.15 | $ 0.70 | $ 0.10 |
| **JDU Utility** | $ 52.70 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.84 | $ 1.15 | $ 0.70 | $ 0.10 |
| **Irrigation** | | | | | | | | | | | |
| I0 1st Year | $ 14.65 | n/a | n/a | n/a | n/a | n/a | n/a | $ 0.51 | n/a | n/a | n/a |
| I1 2nd Year | $ 20.50 | $ 5.60 | $ 1.93 | $ 2.55 | $ 4.70 | $ 1.83 | $ 0.26 | $ 0.72 | $ 1.15 | $ 0.70 | $ 0.10 |
| I2 3rd Year | $ 29.25 | $ 5.60 | $ 1.93 | $ 2.55 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.02 | $ 1.15 | $ 0.70 | $ 0.10 |
| I3 4th Year | $ 42.75 | $ 5.60 | $ 1.93 | $ 3.05 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.50 | $ 1.15 | $ 0.70 | $ 0.10 |
| I6 Service Plumber | $ 49.75 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.74 | $ 1.15 | $ 0.70 | $ 0.10 |
| **CORING** | | | | | | | | | | | |
| C0 Coring A | $ 58.55 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 2.05 | $ 1.15 | $ 0.70 | $ 0.10 |
| C1 Coring B | $ 49.75 | $ 15.75 | $ 2.00 | $ 13.04 | $ 4.70 | $ 1.83 | $ 0.26 | $ 1.74 | $ 1.15 | $ 0.70 | $ 0.10 |

[1] No employer contributions required on apprentices while attending assigned school day. **All payroll deductions are required.**

[2] Includes $0.10 per hour Direct Contribution to the U.A. International Training Fund; Includes $0.54 per hour Direct Contribution to the JAC Building Fund.

[3] Expenses for the Drug Free Alliance are provided by the PCA Industry Fund (Plumbing Council). The PCA Industry Fund rate has been adjusted to $0.26 effective June 1 2023.

[4] U.A. Per Capita Dues ($32.00 per month, paid by the member).

This is the first year of the four-year 2024-2028 Collective Bargaining Agreement.

| 2024-2028 Economic Increases | |
|---|---|
| 6/1/2024-5/31/2025 | $3.05 |
| 6/1/2025-5/31/2026 | $3.65 |
| 6/1/2026-5/31/2027 | $3.50 |
| 6/1/2027-5/31/2028 | $3.50 |
| **Total 4 Year Increases** | **$13.70** |

Apprentice economic package increases effective June 1, 2024 will be determined by a percentage of the Journeymen rate. An apprentice with a minimum of 4 ½ years credit who has successfully obtained the City of Chicago or State of Illinois plumbers license shall be paid the then current journeymen rate. These increases for journeymen and apprentices are to be allocated in a manner to be determined by Plumbers Local Union 130 UA in its sole and exclusive discretion. Local 130 will timely notify each signatory Employer of its determination concerning the allocation.

## IMPORTANT INFORMATION

## APPENDIX D
## ALCOHOL AND DRUG PROGRAM

*Modified and approved in conjunction with CBA as of June 1, 2024*

PLUMBING INDUSTRY DRUG FREE ALLIANCE
PROGRAM ADMINISTERED BY SCREENSAFE, INC
PO BOX 2189, JOLIET, ILLINOIS 60434
1-815-676-2200
E-mail:

ScreenSafeInc@screensafeinc.com

SEE SUPPLEMENT BOOK

## APPENDIX E
## UNITED ASSOCIATION
## STANDARD OF EXCELLENCE

SEE APPENDIX E SUPPLEMENT BOOK

## NOTES

# Exhibit B

LEGACY
PROFESSIONALS LLP
CERTIFIED PUBLIC ACCOUNTANTS

August 31, 2026

Interstate Curb & Concrete Cutting
1466 N Tanglewood Ave.
Palatine, IL 60067

Re: Interstate Curb & Concrete Cutting
File # P130-0625-V1066003

Dear Contractor:

Enclosed, please find our audit report covering the period July 1, 2022 through June 30, 2026. The conclusions presented in this report are based on our recent analysis of your company's records.

As a result, it has been determined that there are additional amounts due for unreported hours as follows:

| | | |
|---|---|---|
| Pension Fund | | 8,185.43 |
| Pension Defined Contribution | | 2,913.79 |
| Welfare Fund | | 9,906.03 |
| Retiree Welfare Fund | | 1,327.00 |
| Education Fund | | 1,144.61 |
| Building Garage Fund | | 413.18 |
| Industry Fund | | 155.10 |
| Target Fund | | 713.57 |
| PAC Fund | | 246.28 |
| Dues Fund | | 1,091.54 |
| 401K | | 0.00 |
| Safety Council | | 0.00 |
| *Sub-total* | | 26,096.53 |
| Add 8% Liquidated Damages | 2,087.72 | |
| Add Interest @ Prime +3.00% per month through **08/31/26** | 6,178.29 | |
| | | 8,266.01 |
| *TOTAL* | | *$34,362.54* |

Please review the enclosed report and make check payable to L.U. 130 Payment Plan Account for the total amount due and submit payment directly to 1340 W. Washington Blvd, 3rd Floor, Chicago, Illinois 60607, within ten (10) days.

If you disagree with the report or any part thereof, you must **arrange within ten (10) days** to meet with us to discuss the area(s) of disagreement and present all records in support of your position.

If you have any questions about the report or wish to arrange submission of additional documentation, please contact us at the telephone number shown below.

If you disagree with the report but fail to meet with us and substantiate your position with records, or if the disagreements are not resolved, the matter will be referred by us to the attorneys for the Funds.

Very truly yours,

Brandon Wolber

Brandon Wolber, CPA
Legacy Professionals LLP

cc: Christopher Anish
Audit & Collections Committee

# Plumbers Local 130 U.A.

SUMMARY OF AMOUNTS DUE

| | 2022 | 2023 | 2024 | 2025 | 2026 | TOTAL |
|---|---|---|---|---|---|---|
| Welfare Fund | $ 1,158.76 | $ 2,269.70 | $ 3,212.11 | $ 3,265.46 | $ - | $ 9,906.03 |
| Retiree Welfare Fund | $ 189.76 | $ 303.10 | $ 409.76 | $ 424.38 | $ - | $ 1,327.00 |
| Pension Fund | $ 1,052.98 | $ 1,973.73 | $ 2,671.64 | $ 2,487.08 | $ - | $ 8,185.43 |
| Pension Defined Cont. | $ 323.00 | $ 643.01 | $ 954.08 | $ 993.70 | $ - | $ 2,913.79 |
| Education Fund | $ 127.59 | $ 261.69 | $ 372.96 | $ 382.37 | $ - | $ 1,144.61 |
| *Education Fund* | *$ 75.91* | *$ 164.82* | *$ 241.84* | *$ 258.09* | *$ -* | $ 740.66 |
| *UA Training Fund* | *$ 8.08* | *$ 15.14* | *$ 20.49* | *$ 19.42* | *$ -* | $ 63.12 |
| *OSHA* | *$ -* | *$ -* | *$ -* | *$ -* | *$ -* | $ - |
| *App. Building Fund* | *$ 43.61* | *$ 81.73* | *$ 110.64* | *$ 104.86* | *$ -* | $ 340.83 |
| Industry Fund | $ 12.11 | $ 39.23 | $ 53.27 | $ 50.49 | $ - | $ 155.10 |
| Group Legal Fund | $ - | $ - | $ - | $ - | $ - | $ - |
| Building - Garage Fund | $ 28.26 | $ 105.57 | $ 143.42 | $ 135.93 | $ - | $ 413.18 |
| Dues Fund | $ 131.62 | $ 255.73 | $ 355.51 | $ 348.68 | $ - | $ 1,091.54 |
| *Working Dues Fund* | *$ 131.62* | *$ 255.73* | *$ 355.51* | *$ 348.68* | *$ -* | $ 1,091.54 |
| *Building Fund Fund* | *$ -* | *$ -* | *$ -* | *$ -* | *$ -* | $ - |
| *Pipe Trades Fund* | *$ -* | *$ -* | *$ -* | *$ -* | *$ -* | $ - |
| Target Fund | $ 80.75 | $ 173.90 | $ 235.61 | $ 223.31 | $ - | $ 713.57 |
| 401k | $ - | $ - | $ - | $ - | $ - | $ - |
| PAC | $ 42.94 | $ 92.66 | $ 65.35 | $ 45.33 | $ - | $ 246.28 |
| | | | | | | |
| **Sub-Total** | $ 3,147.78 | $ 6,118.34 | $ 8,473.71 | $ 8,356.71 | $ - | $ 26,096.53 |
| | | | | | | |
| ***Add Liquidated Damages at 8%*** | | | | | | $ 2,087.72 |
| ***Add Interest at Prime + 3% per month*** | | | | | | $ 6,178.29 |
| ***TOTAL*** | | | | | | $ 34,362.54 |

Compliance Report
to the Trustees,
Plumbers' Benefit Funds, Local 130, U.A.

---------

**Interstate Curb & Concrete Cutting**
July 1, 2022 through June 30, 2026
P130-0625-V1066003

LEGACY
PROFESSIONALS LLP
CERTIFIED PUBLIC ACCOUNTANTS

Trustees, Plumbers' Fringe Benefit Funds,
Local 130, U.A.
c/o Christopher Anish, Field Representative
1340 W. Washington Blvd., 3rd Floor
Chicago, IL 60607

RE: Interstate Curb & Concrete Cutting
File# P130-0625-V1066003
Reporting Period: July 1, 2022 through June 30, 2026

We were engaged by the Board(s) of Trustees of the Plumbers' Fringe Benefit Funds, Local 130, U.A. (the Funds) to assist you in determining whether contributions to the Funds were made in accordance with the Collective Bargaining and Trust Agreements during the above referenced reporting period.

The management of Interstate Curb & Concrete Cutting is responsible for making contributions in accordance with the requirements of the Collective Bargaining and Trust Agreements.

This engagement was performed in accordance with Statements on Standards for Consulting Services issued by the American Institute of Certified Public Accountants. We were not engaged to, and did not, conduct an audit, the objective of which would be the expression of an opinion. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

Our findings are included in the attached schedules.

This report is intended solely for the information and use of the Trustees and Administrator of the Plumbers' Fringe Benefit Funds, Local 130, U.A. and is not intended to be and should not be used by anyone other than these specified parties.

Legacy Professionals LLP

Westchester, Illinois

August 26, 2026

## Notes

A compliance audit was completed on Interstate Curb & Concrete Cutting Inc. on behalf of the Plumbers Local 130 Fringe Benefit Funds. The audit period covered July 1, 2022 through June 30, 2026. Our contact for the audit was Steve Frech, owner. The audit took place at the offices of Legacy Professionals LLP.

The employer uses QuickBooks payroll software to maintain payroll in-house. We verified accuracy of the payroll by comparing the gross payroll wages to the wages on the W2s and SUTA reports. All wages matched so we felt confident that we were viewing the complete payroll.

We classified all employees appearing on the tax records. The only unreported individuals were classified as owner and laborers during the audit period. Interstate Curb & Concrete Cutting no longer employed a plumber after December 2025.

We verified all hours reported to the Fund using the contributions provided by the Funds' office and the employer's payroll records. All PAC deductions during the audit period were noted because they were not reported. Additionally, the employer was issuing periodic performance bonuses which were for work around the office. The exceptions found are detailed on the attached schedules.

We reviewed the disbursements for the audit period and there were no payees that required further attention.

The Exit Interview was not returned.

Our conclusion therefore indicates that the employer owes the following amounts for the report period.

| | 2022 | 2023 | 2024 | 2025 | 2026 | TOTAL |
|---|---|---|---|---|---|---|
| Welfare Fund | $ 1,158.76 | $ 2,269.70 | $ 3,212.11 | $ 3,265.46 | $ - | $ 9,906.03 |
| Retiree Welfare Fund | $ 189.76 | $ 303.10 | $ 409.76 | $ 424.38 | $ - | $ 1,327.00 |
| Pension Fund | $ 1,052.98 | $ 1,973.73 | $ 2,671.64 | $ 2,487.08 | $ - | $ 8,185.43 |
| Pension Defined Cont. | $ 323.00 | $ 643.01 | $ 954.08 | $ 993.70 | $ - | $ 2,913.79 |
| Education Fund | $ 127.59 | $ 261.69 | $ 372.96 | $ 382.37 | $ - | $ 1,144.61 |
| Industry Fund | $ 12.11 | $ 39.23 | $ 53.27 | $ 50.49 | $ - | $ 155.10 |
| Group Legal Fund | $ - | $ - | $ - | $ - | $ - | $ - |
| Target Fund | $ 80.75 | $ 173.90 | $ 235.61 | $ 223.31 | $ - | $ 713.57 |
| Building - Garage Fund | $ 28.26 | $ 105.57 | $ 143.42 | $ 135.93 | $ - | $ 413.18 |
| Dues Fund | $ 131.62 | $ 255.73 | $ 355.51 | $ 348.68 | $ - | $ 1,091.54 |
| 401k | $ - | $ - | $ - | $ - | $ - | $ - |
| PAC | $ 42.94 | $ 92.66 | $ 65.35 | $ 45.33 | $ - | $ 246.28 |
| | | | | | | |
| **Sub-Total** | $ 3,147.78 | $ 6,118.34 | $ 8,473.71 | $ 8,356.71 | $ - | $ 26,096.53 |
| | | | | | | |
| | | | | | | |
| ***Add Liquidated Damages at 8%*** | | | | | | $ 2,087.72 |
| ***Add Interest at Prime + 3% per month*** | | | | | | $ 6,178.29 |
| ***TOTAL*** | | | | | | $ 34,362.54 |

After 8/31/26 add interest per month of $228.34

# Plumbers Local 130 of the United Association

## Benefit Funds - Schedules of Amounts Due

| | | | |
|---|---|---|---|
| Employer Name: | Interstate Curb & Concrete Cutting | Audit Period: | July 1, 2022 through June 30, 2026 |
| Employer Number: | P130-0625-V1066003 | Date of Audit: | August 21, 2026 |
| Person Contacted: | Steve Frech | Auditor(s): | Nick Nigliazzo |

| CODE | SSN | NAME | DATE | WORKED | REPORTED | DIFFERENCE | Welfare Rate | Welfare Due | RetireeWelfare Rate | Retiree Welfare Due | Pension Rate | Pension Due | Pension Defined Contribution | Pension Defined Contribution Due | Education Rate | Education Due | Industry Rate | Industry Due | Group Legal Rate | Group Legal Due | Target Fund Rate | Target Fund Due | Building - Garage Fund Rate | Building - Garage Fund Due | Dues Rate | Dues Due | Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C1 | 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 | [redacted] | Jul-22 | 106.75 | 100.50 | 6.25 | $ 14.35 | $ 89.69 | $ 2.35 | $ 14.69 | $ 13.04 | $ 81.50 | $ 4.00 | $ 25.00 | $ 1.58 | $ 9.88 | $ 0.15 | $ 0.94 | $ - | $ - | $ 1.00 | $ 6.25 | $ 0.35 | $ 2.19 | $ 1.63 | $ 10.19 | $ 240.31 |
| C1 | 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 | [redacted] | Aug-22 | 121.25 | 98.00 | 23.25 | $ 14.35 | $ 333.64 | $ 2.35 | $ 54.64 | $ 13.04 | $ 303.18 | $ 4.00 | $ 93.00 | $ 1.58 | $ 36.74 | $ 0.15 | $ 3.49 | $ - | $ - | $ 1.00 | $23.25 | $ 0.35 | $ 8.14 | $ 1.63 | $ 37.90 | $ 893.96 |
| C1 | 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 | [redacted] | Sep-22 | 51.75 | 34.75 | 17.00 | $ 14.35 | $ 243.95 | $ 2.35 | $ 39.95 | $ 13.04 | $ 221.68 | $ 4.00 | $ 68.00 | $ 1.58 | $ 26.86 | $ 0.15 | $ 2.55 | $ - | $ - | $ 1.00 | $17.00 | $ 0.35 | $ 5.95 | $ 1.63 | $ 27.71 | $ 653.65 |
| C1 | 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 | [redacted] | Oct-22 | 88.50 | 77.25 | 11.25 | $ 14.35 | $ 161.44 | $ 2.35 | $ 26.44 | $ 13.04 | $ 146.70 | $ 4.00 | $ 45.00 | $ 1.58 | $ 17.78 | $ 0.15 | $ 1.69 | $ - | $ - | $ 1.00 | $11.25 | $ 0.35 | $ 3.94 | $ 1.63 | $ 18.34 | $ 432.56 |
| C1 | 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 | [redacted] | Nov-22 | 102.50 | 92.50 | 10.00 | $ 14.35 | $ 143.50 | $ 2.35 | $ 23.50 | $ 13.04 | $ 130.40 | $ 4.00 | $ 40.00 | $ 1.58 | $ 15.80 | $ 0.15 | $ 1.50 | $ - | $ - | $ 1.00 | $10.00 | $ 0.35 | $ 3.50 | $ 1.63 | $ 16.30 | $ 384.50 |
| C1 | 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 | [redacted] | Dec-22 | 39.00 | 26.00 | 13.00 | $ 14.35 | $ 186.55 | $ 2.35 | $ 30.55 | $ 13.04 | $ 169.52 | $ 4.00 | $ 52.00 | $ 1.58 | $ 20.54 | $ 0.15 | $ 1.95 | $ - | $ - | $ 1.00 | $13.00 | $ 0.35 | $ 4.55 | $ 1.63 | $ 21.19 | $ 499.85 |
| C1 | 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 | [redacted] | May-23 | 140.08 | 139.00 | 1.08 | $ 14.35 | $ 15.50 | $ 2.35 | $ 2.54 | $ 13.04 | $ 14.08 | $ 4.00 | $ 4.32 | $ 1.58 | $ 1.71 | $ 0.15 | $ 0.16 | $ - | $ - | $ 1.00 | $ 1.08 | $ 0.35 | $ 0.38 | $ 1.63 | $ 1.76 | $ 41.53 |
| C1 | 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 | [redacted] | Jun-23 | 148.00 | 112.00 | 36.00 | $ 15.00 | $ 540.00 | $ 2.00 | $ 72.00 | $ 13.04 | $ 469.44 | $ 4.25 | $ 153.00 | $ 1.73 | $ 62.28 | $ 0.26 | $ 9.36 | $ - | $ - | $ 1.15 | $41.40 | $ 0.70 | $25.20 | $ 1.69 | $ 60.84 | $ 1,433.52 |
| C1 | 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 | [redacted] | Jul-23 | 146.50 | 136.25 | 10.25 | $ 15.00 | $ 153.75 | $ 2.00 | $ 20.50 | $ 13.04 | $ 133.66 | $ 4.25 | $ 43.56 | $ 1.73 | $ 17.73 | $ 0.26 | $ 2.67 | $ - | $ - | $ 1.15 | $11.79 | $ 0.70 | $ 7.18 | $ 1.69 | $ 17.32 | $ 408.16 |
| C1 | 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 | [redacted] | Aug-23 | 166.32 | 142.25 | 24.07 | $ 15.00 | $ 361.05 | $ 2.00 | $ 48.14 | $ 13.04 | $ 313.87 | $ 4.25 | $ 102.30 | $ 1.73 | $ 41.64 | $ 0.26 | $ 6.26 | $ - | $ - | $ 1.15 | $27.68 | $ 0.70 | $16.85 | $ 1.69 | $ 40.68 | $ 958.47 |
| C1 | 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 | [redacted] | Sep-23 | 117.25 | 104.25 | 13.00 | $ 15.00 | $ 195.00 | $ 2.00 | $ 26.00 | $ 13.04 | $ 169.52 | $ 4.25 | $ 55.25 | $ 1.73 | $ 22.49 | $ 0.26 | $ 3.38 | $ - | $ - | $ 1.15 | $14.95 | $ 0.70 | $ 9.10 | $ 1.69 | $ 21.97 | $ 517.66 |
| C1 | 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 | [redacted] | Oct-23 | 126.50 | 97.75 | 28.75 | $ 15.00 | $ 431.25 | $ 2.00 | $ 57.50 | $ 13.04 | $ 374.90 | $ 4.25 | $ 122.19 | $ 1.73 | $ 49.74 | $ 0.26 | $ 7.48 | $ - | $ - | $ 1.15 | $33.06 | $ 0.70 | $20.13 | $ 1.69 | $ 48.59 | $ 1,144.83 |
| C1 | 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 | [redacted] | Nov-23 | 113.00 | 89.25 | 23.75 | $ 15.00 | $ 356.25 | $ 2.00 | $ 47.50 | $ 13.04 | $ 309.70 | $ 4.25 | $ 100.94 | $ 1.73 | $ 41.09 | $ 0.26 | $ 6.18 | $ - | $ - | $ 1.15 | $27.31 | $ 0.70 | $16.63 | $ 1.69 | $ 40.14 | $ 945.73 |
| C1 | 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 | [redacted] | Dec-23 | 119.71 | 105.25 | 14.46 | $ 15.00 | $ 216.90 | $ 2.00 | $ 28.92 | $ 13.04 | $ 188.56 | $ 4.25 | $ 61.46 | $ 1.73 | $ 25.02 | $ 0.26 | $ 3.76 | $ - | $ - | $ 1.15 | $16.63 | $ 0.70 | $10.12 | $ 1.69 | $ 24.44 | $ 575.80 |
| C1 | 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 | [redacted] | May-24 | 78.67 | 59.00 | 19.67 | $ 15.00 | $ 295.05 | $ 2.00 | $ 39.34 | $ 13.04 | $ 256.50 | $ 4.25 | $ 83.60 | $ 1.73 | $ 34.03 | $ 0.26 | $ 5.11 | $ - | $ - | $ 1.15 | $22.62 | $ 0.70 | $13.77 | $ 1.69 | $ 33.24 | $ 783.26 |
| C1 | 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 | [redacted] | Jun-24 | 116.83 | 58.00 | 58.83 | $ 15.75 | $ 926.57 | $ 2.00 | $ 117.66 | $ 13.04 | $ 767.14 | $ 4.70 | $ 276.50 | $ 1.83 | $ 107.66 | $ 0.26 | $ 15.30 | $ - | $ - | $ 1.15 | $67.65 | $ 0.70 | $41.18 | $ 1.74 | $ 102.36 | $ 2,422.03 |
| C1 | 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 | [redacted] | Jul-24 | 88.40 | 57.50 | 30.90 | $ 15.75 | $ 486.68 | $ 2.00 | $ 61.80 | $ 13.04 | $ 402.94 | $ 4.70 | $ 145.23 | $ 1.83 | $ 56.55 | $ 0.26 | $ 8.03 | $ - | $ - | $ 1.15 | $35.54 | $ 0.70 | $21.63 | $ 1.74 | $ 53.77 | $ 1,272.15 |
| C1 | 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 | [redacted] | Aug-24 | 157.37 | 133.50 | 23.87 | $ 15.75 | $ 375.95 | $ 2.00 | $ 47.74 | $ 13.04 | $ 311.26 | $ 4.70 | $ 112.19 | $ 1.83 | $ 43.68 | $ 0.26 | $ 6.21 | $ - | $ - | $ 1.15 | $27.45 | $ 0.70 | $16.71 | $ 1.74 | $ 41.53 | $ 982.73 |
| C1 | 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 | [redacted] | Sep-24 | 111.07 | 97.25 | 13.82 | $ 15.75 | $ 217.67 | $ 2.00 | $ 27.64 | $ 13.04 | $ 180.21 | $ 4.70 | $ 64.95 | $ 1.83 | $ 25.29 | $ 0.26 | $ 3.59 | $ - | $ - | $ 1.15 | $15.89 | $ 0.70 | $ 9.67 | $ 1.74 | $ 24.05 | $ 568.97 |
| C1 | 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 | [redacted] | Oct-24 | 125.34 | 107.25 | 18.09 | $ 15.75 | $ 284.92 | $ 2.00 | $ 36.18 | $ 13.04 | $ 235.89 | $ 4.70 | $ 85.02 | $ 1.83 | $ 33.10 | $ 0.26 | $ 4.70 | $ - | $ - | $ 1.15 | $20.80 | $ 0.70 | $12.66 | $ 1.74 | $ 31.48 | $ 744.77 |
| C1 | 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 | [redacted] | Nov-24 | 120.11 | 97.50 | 22.61 | $ 15.75 | $ 356.11 | $ 2.00 | $ 45.22 | $ 13.04 | $ 294.83 | $ 4.70 | $ 106.27 | $ 1.83 | $ 41.38 | $ 0.26 | $ 5.88 | $ - | $ - | $ 1.15 | $26.00 | $ 0.70 | $15.83 | $ 1.74 | $ 39.34 | $ 930.85 |
| C1 | 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 | [redacted] | Dec-24 | 51.34 | 34.25 | 17.09 | $ 15.75 | $ 269.17 | $ 2.00 | $ 34.18 | $ 13.04 | $ 222.85 | $ 4.70 | $ 80.32 | $ 1.83 | $ 31.27 | $ 0.26 | $ 4.44 | $ - | $ - | $ 1.15 | $19.65 | $ 0.70 | $11.96 | $ 1.74 | $ 29.74 | $ 703.60 |
| C1 | 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 | [redacted] | May-25 | 57.57 | 43.50 | 14.07 | $ 15.75 | $ 221.60 | $ 2.00 | $ 28.14 | $ 13.04 | $ 183.47 | $ 4.70 | $ 66.13 | $ 1.83 | $ 25.75 | $ 0.26 | $ 3.66 | $ - | $ - | $ 1.15 | $16.18 | $ 0.70 | $ 9.85 | $ 1.74 | $ 24.48 | $ 579.26 |
| C1 | 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 | [redacted] | Jun-25 | 62.31 | 48.50 | 13.81 | $ 16.90 | $ 233.39 | $ 2.20 | $ 30.38 | $ 12.79 | $ 176.63 | $ 5.15 | $ 71.12 | $ 1.98 | $ 27.34 | $ 0.26 | $ 3.59 | $ - | $ - | $ 1.15 | $15.88 | $ 0.70 | $ 9.67 | $ 1.80 | $ 24.86 | $ 592.86 |
| C1 | 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 | [redacted] | Jul-25 | 100.98 | 84.00 | 16.98 | $ 16.90 | $ 286.96 | $ 2.20 | $ 37.36 | $ 12.79 | $ 217.17 | $ 5.15 | $ 87.45 | $ 1.98 | $ 33.62 | $ 0.26 | $ 4.41 | $ - | $ - | $ 1.15 | $19.53 | $ 0.70 | $11.89 | $ 1.80 | $ 30.56 | $ 728.95 |
| C1 | 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 | [redacted] | Aug-25 | 85.31 | 65.50 | 19.81 | $ 16.90 | $ 334.79 | $ 2.20 | $ 43.58 | $ 12.79 | $ 253.37 | $ 5.15 | $ 102.02 | $ 1.98 | $ 39.22 | $ 0.26 | $ 5.15 | $ - | $ - | $ 1.15 | $22.78 | $ 0.70 | $13.87 | $ 1.80 | $ 35.66 | $ 850.44 |
| C1 | 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 | [redacted] | Sep-25 | 99.78 | 65.00 | 34.78 | $ 16.90 | $ 587.78 | $ 2.20 | $ 76.52 | $ 12.79 | $ 444.84 | $ 5.15 | $ 179.12 | $ 1.98 | $ 68.86 | $ 0.26 | $ 9.04 | $ - | $ - | $ 1.15 | $40.00 | $ 0.70 | $24.35 | $ 1.80 | $ 62.60 | $ 1,493.11 |
| C1 | 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 | [redacted] | Oct-25 | 107.98 | 70.50 | 37.48 | $ 16.90 | $ 633.41 | $ 2.20 | $ 82.46 | $ 12.79 | $ 479.37 | $ 5.15 | $ 193.02 | $ 1.98 | $ 74.21 | $ 0.26 | $ 9.74 | $ - | $ - | $ 1.15 | $43.10 | $ 0.70 | $26.24 | $ 1.80 | $ 67.46 | $ 1,609.02 |
| C1 | 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 | [redacted] | Nov-25 | 88.13 | 51.75 | 36.38 | $ 16.90 | $ 614.82 | $ 2.20 | $ 80.04 | $ 12.79 | $ 465.30 | $ 5.15 | $ 187.36 | $ 1.98 | $ 72.03 | $ 0.26 | $ 9.46 | $ - | $ - | $ 1.15 | $41.84 | $ 0.70 | $25.47 | $ 1.80 | $ 65.48 | $ 1,561.79 |
| C1 | 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 | [redacted] | Dec-25 | 45.37 | 24.50 | 20.87 | $ 16.90 | $ 352.70 | $ 2.20 | $ 45.91 | $ 12.79 | $ 266.93 | $ 5.15 | $ 107.48 | $ 1.98 | $ 41.32 | $ 0.26 | $ 5.43 | $ - | $ - | $ 1.15 | $24.00 | $ 0.70 | $14.61 | $ 1.80 | $ 37.57 | $ 895.95 |

# Plumbers Local 130 of the United Association

## 401k / Savings / PAC- Schedules of Amounts Due

Employer Name : Interstate Curb & Concrete Cutting
Employer Number: P130-0625-V1066003
Person Contacted: Steve Frech

Audit Period: July 1, 2022 through June 30, 2026
Date of Audit: August 21, 2026
Auditor(s): Nick Nigliazzo

| CODE | SSN# | Name | Date | 401k Deducted | 401k Reported | 401k Owed | PAC Deducted | PAC Reported | PAC Owed |
|---|---|---|---|---|---|---|---|---|---|
| C1 | 0 | | Jul-22 | | | $ - | $ 10.05 | $ - | $ 10.05 |
| C1 | 0 | | Aug-22 | | | $ - | $ 9.81 | $ - | $ 9.81 |
| C1 | 0 | | Sep-22 | | | $ - | $ 3.48 | $ - | $ 3.48 |
| C1 | 0 | | Oct-22 | | | $ - | $ 7.73 | $ - | $ 7.73 |
| C1 | 0 | | Nov-22 | | | $ - | $ 9.26 | $ - | $ 9.26 |
| C1 | 0 | | Dec-22 | | | $ - | $ 2.61 | $ - | $ 2.61 |
| C1 | 0 | | May-23 | | | $ - | $ 13.90 | $ - | $ 13.90 |
| C1 | 0 | | Jun-23 | | | $ - | $ 11.21 | $ - | $ 11.21 |
| C1 | 0 | | Jul-23 | | | $ - | $ 13.63 | $ - | $ 13.63 |
| C1 | 0 | | Aug-23 | | | $ - | $ 14.23 | $ - | $ 14.23 |
| C1 | 0 | | Sep-23 | | | $ - | $ 10.43 | $ - | $ 10.43 |
| C1 | 0 | | Oct-23 | | | $ - | $ 9.78 | $ - | $ 9.78 |
| C1 | 0 | | Nov-23 | | | $ - | $ 8.94 | $ - | $ 8.94 |
| C1 | 0 | | Dec-23 | | | $ - | $ 10.54 | $ - | $ 10.54 |
| C1 | 0 | | Jan-24 | | | $ - | $ 0.90 | $ - | $ 0.90 |
| C1 | 0 | | May-24 | | | $ - | $ 5.90 | $ - | $ 5.90 |
| C1 | 0 | | Jun-24 | | | $ - | $ 5.80 | $ - | $ 5.80 |
| C1 | 0 | | Jul-24 | | | $ - | $ 5.75 | $ - | $ 5.75 |
| C1 | 0 | | Aug-24 | | | $ - | $ 13.36 | $ - | $ 13.36 |
| C1 | 0 | | Sep-24 | | | $ - | $ 9.73 | $ - | $ 9.73 |
| C1 | 0 | | Oct-24 | | | $ - | $ 10.73 | $ - | $ 10.73 |
| C1 | 0 | | Nov-24 | | | $ - | $ 9.75 | $ - | $ 9.75 |
| C1 | 0 | | Dec-24 | | | $ - | $ 3.43 | $ - | $ 3.43 |
| C1 | 0 | | May-25 | | | $ - | $ 4.35 | $ - | $ 4.35 |
| C1 | 0 | | Jun-25 | | | $ - | $ 4.85 | $ - | $ 4.85 |
| C1 | 0 | | Jul-25 | | | $ - | $ 8.40 | $ - | $ 8.40 |
| C1 | 0 | | Aug-25 | | | $ - | $ 6.55 | $ - | $ 6.55 |
| C1 | 0 | | Sep-25 | | | $ - | $ 6.50 | $ - | $ 6.50 |
| C1 | 0 | | Oct-25 | | | $ - | $ 7.05 | $ - | $ 7.05 |
| C1 | 00 | | Nov-25 | | | $ - | $ 5.18 | $ - | $ 5.18 |
| C1 | 00 | | Dec-25 | | | $ - | $ 2.45 | $ - | $ 2.45 |

**Plumbers' Benefit Funds**
**Local 130 U.A.**

At Prime + 3% Per Annum

Liquidated Damages at 8%

Employer Name: Interstate Curb & Concrete Cutting

Job Number: P130-0625-V1066003

| Month | Contribution Deficiencies | Balance Due | Interest | Interest Due | Liquidated Damages |
|---|---|---|---|---|---|
| Jan-22 | $ - | $ - | 6.25% | $ - | $ - |
| Feb-22 | $ - | $ - | 6.25% | $ - | $ - |
| Mar-22 | $ - | $ - | 6.25% | $ - | $ - |
| Apr-22 | $ - | $ - | 6.50% | $ - | $ - |
| May-22 | $ - | $ - | 6.50% | $ - | $ - |
| Jun-22 | $ - | $ - | 7.00% | $ - | $ - |
| Jul-22 | $ 250.36 | $ 250.36 | 7.75% | $ 1.62 | $ 20.03 |
| Aug-22 | $ 903.77 | $ 1,154.14 | 8.50% | $ 8.18 | $ 72.30 |
| Sep-22 | $ 657.13 | $ 1,811.27 | 8.50% | $ 12.83 | $ 52.57 |
| Oct-22 | $ 440.29 | $ 2,251.56 | 9.25% | $ 17.36 | $ 35.22 |
| Nov-22 | $ 393.76 | $ 2,645.32 | 9.25% | $ 20.39 | $ 31.50 |
| Dec-22 | $ 502.46 | $ 3,147.78 | 10.00% | $ 26.23 | $ 40.20 |
| Jan-23 | $ - | $ 3,147.78 | 10.50% | $ 27.54 | $ - |
| Feb-23 | $ - | $ 3,147.78 | 10.50% | $ 27.54 | $ - |
| Mar-23 | $ - | $ 3,147.78 | 10.75% | $ 28.20 | $ - |
| Apr-23 | $ - | $ 3,147.78 | 11.00% | $ 28.85 | $ - |
| May-23 | $ 55.43 | $ 3,203.20 | 11.00% | $ 29.36 | $ 4.43 |
| Jun-23 | $ 1,444.73 | $ 4,647.93 | 11.25% | $ 43.57 | $ 115.58 |
| Jul-23 | $ 421.79 | $ 5,069.72 | 11.25% | $ 47.53 | $ 33.74 |
| Aug-23 | $ 972.70 | $ 6,042.42 | 11.50% | $ 57.91 | $ 77.82 |
| Sep-23 | $ 528.09 | $ 6,570.51 | 11.50% | $ 62.97 | $ 42.25 |
| Oct-23 | $ 1,154.61 | $ 7,725.11 | 11.50% | $ 74.03 | $ 92.37 |
| Nov-23 | $ 954.67 | $ 8,679.78 | 11.50% | $ 83.18 | $ 76.37 |
| Dec-23 | $ 586.34 | $ 9,266.11 | 11.50% | $ 88.80 | $ 46.91 |
| Jan-24 | $ 0.90 | $ 9,267.01 | 11.50% | $ 88.81 | $ 0.07 |
| Feb-24 | $ - | $ 9,267.01 | 11.50% | $ 88.81 | $ - |
| Mar-24 | $ - | $ 9,267.01 | 11.50% | $ 88.81 | $ - |
| Apr-24 | $ - | $ 9,267.01 | 11.50% | $ 88.81 | $ - |
| May-24 | $ 789.16 | $ 10,056.17 | 11.50% | $ 96.37 | $ 63.13 |
| Jun-24 | $ 2,427.83 | $ 12,484.00 | 11.50% | $ 119.64 | $ 194.23 |
| Jul-24 | $ 1,277.90 | $ 13,761.91 | 11.50% | $ 131.88 | $ 102.23 |
| Aug-24 | $ 996.09 | $ 14,757.99 | 11.50% | $ 141.43 | $ 79.69 |
| Sep-24 | $ 578.70 | $ 15,336.69 | 11.50% | $ 146.98 | $ 46.30 |
| Oct-24 | $ 755.50 | $ 16,092.19 | 11.00% | $ 147.51 | $ 60.44 |
| Nov-24 | $ 940.60 | $ 17,032.79 | 11.00% | $ 156.13 | $ 75.25 |
| Dec-24 | $ 707.03 | $ 17,739.82 | 10.75% | $ 158.92 | $ 56.56 |
| Jan-25 | $ - | $ 17,739.82 | 10.50% | $ 155.22 | $ - |
| Feb-25 | $ - | $ 17,739.82 | 10.50% | $ 155.22 | $ - |
| Mar-25 | $ - | $ 17,739.82 | 10.50% | $ 155.22 | $ - |
| Apr-25 | $ - | $ 17,739.82 | 10.50% | $ 155.22 | $ - |
| May-25 | $ 583.61 | $ 18,323.43 | 10.50% | $ 160.33 | $ 46.69 |
| Jun-25 | $ 597.71 | $ 18,921.14 | 10.50% | $ 165.56 | $ 47.82 |
| Jul-25 | $ 737.35 | $ 19,658.49 | 10.50% | $ 172.01 | $ 58.99 |
| Aug-25 | $ 856.99 | $ 20,515.49 | 10.50% | $ 179.51 | $ 68.56 |
| Sep-25 | $ 1,499.61 | $ 22,015.09 | 11.50% | $ 210.98 | $ 119.97 |
| Oct-25 | $ 1,616.07 | $ 23,631.16 | 11.50% | $ 226.47 | $ 129.29 |
| Nov-25 | $ 1,566.97 | $ 25,198.13 | 11.00% | $ 230.98 | $ 125.36 |
| Dec-25 | $ 898.40 | $ 26,096.53 | 11.00% | $ 239.22 | $ 71.87 |
| Jan-26 | $ - | $ 26,096.53 | 10.75% | $ 233.78 | $ - |
| Feb-26 | $ - | $ 26,096.53 | 10.50% | $ 228.34 | $ - |
| Mar-26 | $ - | $ 26,096.53 | 10.50% | $ 228.34 | $ - |
| Apr-26 | $ - | $ 26,096.53 | 10.50% | $ 228.34 | $ - |
| May-26 | $ - | $ 26,096.53 | 10.50% | $ 228.34 | $ - |
| Jun-26 | $ - | $ 26,096.53 | 10.50% | $ 228.34 | $ - |
| Jul-26 | $ - | $ 26,096.53 | 10.50% | $ 228.34 | $ - |
| Aug-26 | $ - | $ 26,096.53 | 10.50% | $ 228.34 | $ - |
| Total | $ 26,096.53 | | | $ 6,178.29 | $ 2,087.72 |

# Exhibit C

**From:** Nigliazzo, Nick <nnigliazzo@legacycpas.com>
**Sent:** Thursday, September 10, 2026 11:11 AM
**To:** Christopher Anish <CAnish@ualocal130funds.com>; Andrew Pigott <apigott@gregoriolaw.com>
**Cc:** Greg Hose <ghose@gregoriolaw.com>
**Subject:** RE: Noncompliance with the Plumbers Local 130 Funds Audit - Interstate Curb

Good morning Chris and Andrew,

We received an e-mail from Mr. Frech this morning stating the following, '*I just got your audit report. I totally disagree with this report! Its absurd that I owe that kind of money. I protest this report. Are you trying to put me out of business?*
*My report to the union every month are accurate for hours worked in the field cutting concrete.*'

****

Thank you,

**Nick Nigliazzo**

**Legacy Professionals LLP**
312-384-4255

**From:** Nigliazzo, Nick <nnigliazzo@legacycpas.com>
**Sent:** Monday, August 24, 2026 6:49 AM
**To:** Christopher Anish <canish@ualocal130funds.com>
**Cc:** Andrew Pigott <apigott@gregoriolaw.com>
**Subject:** RE: Noncompliance with the Plumbers Local 130 Funds Audit - Interstate Curb

Hi Chris,

Quick update and concern on Interstate Curb & Concrete. We found that their reported plumber earns a "performance bonus' most every week. When questioned about it Mr. Frech indicated to us that; *He was helping me around the office. Didn't have enough concrete cutting for him to keep him busy. I finally lost him to another concrete cutter who could keep him busy.*
For a part of the audit period when those performance bonus amounts are divided by his wage rate they come out to even numbers of hours. We are going to include hours based on the performance bonuses divided by his wage rate unless we are directed not to. Please let us know your thoughts on this matter.

Thanks,

**Nick Nigliazzo**

**Legacy Professionals LLP**
312-384-4255

# Exhibit D

# INTERSTATE CURB & CONCRETE CUTTING, INC.

*Full Service Concrete Sawing & Drilling*

www.interstateccc.com

Gregoria, Stec, Klein& Hose, LLC

Two North LaSalle St

Suite #1650

Chicago, IL 60602

November 10th 2026

Re: Plumbers Local #130 Audit

Dear, Andrew S Pigott,

On or about August 31st, 2026, I received a letter from Legacy Professional, LLC about a audit for Local #130 Plumbers Union for the period 7/01/2022 – 6/30/2026. This report state that Interstate Curb & Concrete Cutting, Inc owes additional amount with interest and damages of $34,362.54.

I refute these findings! These numbers aren't based on hours worked by [redacted]'s working hours cutting concrete (2461.5 Hours) for Interstate Curb & Concrete Cutting, Inc.

Because of Covid and the recession due to the bad economy, [redacted] was getting less hours cutting concrete. To make up for less hours available, so I wouldn't lose him to another concrete cutter, [redacted] did a verbal agreement to get him some extra money. [redacted] agreed to work for me directly doing personal jobs for me doing Non Concrete Cutting duties.

Being 68 years old and having multiple procedures & surgeries on both shoulders, two hip replacements, and a full knee replacement, I need someone to help me around my three houses, vehicles and boat. Things that are impossible for me to do myself.

[redacted] has performed numerous maintenance and installation jobs inside and outside my house that I can't perform. Better to pay someone I know and trust, then hire a stranger. The agreement between [redacted] and I that I would pay him union wages, no fringes with taxes taken out. Payment would be made on a company check with is concrete cutting hours.

I'm paying him with a company check because, I've hardly paid myself and are living off monthly Social Security payments and keeping the company running when customer are paying slow, with my retirement accounts. After the audit, I talk to [redacted] about the issue of Bonus payments. He called the union numerous times (Christopher Anish) with no results. No one responded to his calls.

I don't feel that I owe the union any addition payment besides the money I have already paid in! This was a personal matter between [redacted] & I, this has nothing to due with the union. This just another money grab by the union.

[redacted] has the right to work for anyone on the side (Non Concrete Cutting) to make ends meet including me. If I want to pay him with a company check with taxes take out for Non Concrete Cutting Duties that's my right.

I have no intention to pay these non-legit charges. You mine as well put me out of business. You need even small contractors like me to hire your union workers. It seems to be your more inclined to put the screws to us contractors to fill your pockets.

Sincerely,

Steven R Frech

President

Interstate Curb & Concrete Cutting, Inc.

# Exhibit E

Outlook

**Re: Audit Delinquency to the Plumbers 130 Funds**

**From** STEVE FRECH <curbcut@comcast.net>
**Date** Thu 11/10/2022 7:04 AM
**To** Andrew Pigott <apigott@gregoriolaw.com>

First of all my name is Steven R. Frech, not French.

As far as office/shop hour, I will not pay in benefits. This is voluntary hours, he is not required to come in the shop or run errands. I have never had problems in the past with this.
This is what I sent to Maria Sherman auditor:

I will not pay Shop/Office hours to the fund. [redacted] & I have a agreement that if he wants to make extra money if we are slow. He can do odds & ends in the job. I would pay him going wages with no benefits. It's totally voluntary.
I could hire someone for $15-$20 an hour. I would rather pay [redacted] the money. While he's in the shop/office or running errands for me, he's not making me any money as if he was cutting concrete. You wouldn't have a problem with him working at Home Depot or any other business, so whats the difference.
[redacted] had a conversation with Scott Spangle at Volo training center.about this issue. He has the right to work. You don't think other 130 Plumber are doing work for there contractor/employee on the side for cash.

Also I have a issue with Liquidate Damages & Added Interest

Steven R Frech
Interstate Curb & Concrete Cutting, Inc.

> On 11/04/2022 4:52 PM Andrew Pigott <apigott@gregoriolaw.com> wrote:
>
> Dear Mr. French,
>
> Gregorio, Stec, Klein & Hosé represents the Plumbers Local 130 Funds. Your company, Interstate Curb & Concrete Cutting, continues to owe the Funds $955.68 for its fringe benefit contribution audit findings from 4/1/2019 through 6/30/2022 (audit report attached). You must pay this amount in full, or contact Anthony Rottman (trottman@ualocal130funds.com) to make time-repayment arrangements, within the next 10 calendar-days. Should you fail to do so, the Funds may authorize us to file suit against your company and, if appropriate, you. Feel free to contact me with any questions or concerns. Thank you for your attention to this matter.

Sincerely,

Andrew S. Pigott

Andrew S. Pigott

Gregorio, Stec, Klein & Hosé

Two N. LaSalle St.

Suite 1650

Chicago, Illinois 60602

Main: 312-263-2343

Direct: 312-319-7608

This message potentially contains privileged and/or confidential information and is intended only for the individual named. If you are not the named addressee, you should not disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this email by mistake and delete this email from your system. If you are not the intended recipient, you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PLUMBERS' PENSION FUND, LOCAL 130, U.A., PLUMBERS' WELFARE FUND, LOCAL 130, U.A., THE TRUST FUND FOR APPRENTICE AND JOURNEYMAN EDUCATION AND TRAINING, LOCAL 130, U.A., PLUMBERS' RETIREMENT SAVINGS PLAN FUND, LOCAL 130, U.A., and the PLUMBERS' DEFINED CONTRIBUTION FUND, | ) | Case No.: 22 CV |
| Plaintiffs, | ) | Judge: |
| v. | ) | Magistrate Judge: |
| INTERSTATE CURB & CONCRETE CUTTING, INC., | ) | |
| Defendants. | ) | |

**COMPLAINT**

The Plaintiffs, PLUMBERS' PENSION FUND, LOCAL 130, U.A., et al. (collectively, "Funds"), by one of their attorneys, Andrew S. Pigott, and the law firm of Gregorio, Stec, Klein & Hosé, in their Complaint against Defendant, INTERSTATE CURB & CONCRETE CUTTING, INC., state as follows:

1. This Court has jurisdiction over this cause as it presents questions under Section 502 of the Employee Retirement Income Security Act and Section 301 of the Taft-Hartley Act. (29 U.S.C. §§1132 and 185).

2. Venue lies in the Northern District of Illinois as the administration of the Funds takes place in Chicago. (29 U.S.C. §1132(e)(2)).

3. The Funds are multi-employer plans under 29 U.S.C. §1002.

4. The Funds receive contributions from employers pursuant to their Collective Bargaining Agreements ("CBAs") with the CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A., ("Local 130"). (See Ex. A).

5. Defendant is an employer engaged in an industry affecting commerce, namely commercial, industrial, or residential plumbing.

6. Defendant bound itself to the Local 130 CBA by signing a Memorandum Agreement with Local 130; by making some, but not all, of the contributions required by the CBA; and by maintaining membership in the PLUMBING CONTRACTORS ASSOCIATION OF GREATER CHICAGO ("PCA").

7. The CBA binds Defendant to the Agreement and Declarations of Trust ("Trust Agreements") that created the Funds. (Ex. A, Sec. 9.2).

8. The CBA and Trust Agreements require Defendant to contribute to the Funds for work by its bargaining unit employees. (Ex. A, Sec. 6.1 ("The Employer hereby agrees to employ journeymen plumbers at the Union prevailing wage rates and pay the fringe benefit contributions set forth or to be determined in the manner set forth in Appendix C to this Agreement. The rates and contributions set forth therein shall be deemed the standard rates to be strictly adhered to as of the effective dates shown")).

9. The CBA prohibits any variance from the wages and fringe benefit contributions called for under the CBA. (*Id.* ("No Employer shall pay wages in excess of the rates set forth or to be determined in the manner set forth in Appendix C")).

10. Under the CBA, Employers must contribute contractually set amounts for each hour worked by employees covered by the CBA. (Ex. A, Secs. 9.1-9.4 ("Effective as of the dates set

forth in Appendix C, each Employer will contribute the sum per hour set forth or to be determined in the manner set forth in Appendix C for each hour worked by and on behalf of each employee covered by this Agreement to the *** Fund")).

11. LOCAL 130 MEMBER X is a Journeyman Plumber, a member of Local 130, and Defendant's employee.

12. As a Local 130 Journeyman Plumber, employed by a Local 130 signatory and PCA member, LOCAL 130 MEMBER X, is an employee covered by the CBA. (Ex. A, Sec. 1.1-1.3).

13. On or around August 31, 2022, the Funds conducted an ERISA fringe benefit contribution compliance audit of Defendant.

14. The audit revealed hours worked by LOCAL 130 MEMBER X for which Defendant made no contributions to the Funds. (Ex. B).

15. When counsel for the Funds contacted Defendant, demanding payment of the audit findings, Defendant refused to pay for LOCAL 130 MEMBER X's audit-detected hours. (Ex. C).

16. Defendant contended it had a side-agreement with LOCAL 130 MEMBER X where it would pay him a fringe benefit-free wage, less than that provided by the CBA, for non-bargaining unit work.

17. The previously quoted wage and contribution provisions of the CBA make no distinction between the amount due employees for bargaining unit work and non-bargaining unit work.

18. Federal appellate authority considering similar CBA-language to the Local 130 CBA hold that contributions are due for each hour worked by a covered employee regardless of the nature of the work. See *McCleskey v. DLF Construction, Inc.*, 689 F.3d 677 (7th Cir. 2012);

*Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, 606 F. App'x 798 (6th Cir. 2015).

WHEREFORE, the Plaintiff-Funds ask this Court to:

A. Declare Defendant obligated to contribute for each hour worked by its CBA-covered employees regardless of assigned task;

B. Enter judgment in the Funds' favor and against Defendant for the audit findings;

C. Award the Funds:

1) Their audit costs, pursuant to the CBA and Trust Agreements;

2) Attorneys' fees and costs pursuant to the CBA, Trust Agreements and 29 U.S.C. §1132(g)(2);

3) Liquidated damages and interest pursuant to the CBA, Trust Agreements, and 29 U.S.C. §1132(g)(2); or

4) Double interest pursuant to 29 U.S.C. §1132(g)(2), whichever is greater.

Respectfully submitted,
**PLUMBERS' PENSION FUND, LOCAL 130, U.A., et al.**

By: /s/ Andrew S. Pigott
On of their attorneys

Gregory W. Hosé
ARDC #: 6323889
John Phillip Festa
ARDC# 6323889
Andrew S. Pigott
ARDC# 6278244
**GREGORIO, STEC, KLEIN & HOSÉ**
Attorney for Plaintiffs
2 N. LaSalle St., Suite 1650
Chicago, IL 60602
312/263-2343
apigott@gregoriolaw.com